**A COMBINED HEARING TO CONSIDER THE ADEQUACY OF THIS DISCLOSURE STATEMENT ON A FINAL BASIS UNDER SECTION 1125 OF THE BANKRUPTCY CODE AND CONFIRMATION OF THE PREPACKAGED PLAN WILL BE SET BY THE BANKRUPTCY COURT AFTER THE PETITION DATE.  THE DEBTOR RESERVES THE RIGHT TO AMEND, SUPPLEMENT OR OTHERWISE MODIFY THIS DISCLOSURE STATEMENT PRIOR TO AND UP TO THE DATE OF SUCH HEARING.**

**THIS DISCLOSURE STATEMENT IS BEING USED FOR THE SOLICITATION OF VOTES WITH RESPECT TO THE PREPACKAGED PLAN, INCLUDING THE SOLICITATION OF PRE-PETITION VOTES, BUT HAS NOT YET BEEN SUBMITTED FOR APPROVAL OR APPROVED BY THE BANKRUPTCY COURT; SUCH APPROVAL WILL BE SOUGHT AFTER THE PETITION DATE IN ACCORDANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE. THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SECURITY FIRST CORP., | Case No. 20-12053 (BLS) |
| Debtor.[1] | |

**DISCLOSURE STATEMENT FOR THE PRE-PACKAGED CHAPTER 11 PLAN OF SECURITY FIRST CORP. DATED AUGUST 29, 2020**

SULLIVAN · HAZELTINE · ALLINSON LLC
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, Delaware  19801
Tel: (302) 428-8191
Fax: (302) 428-8195
Email: bsullivan@sha-llc.com
whazeltine@sha-llc.com

*Proposed Attorneys for Debtor and Debtor in Possession*

Dated: August 31, 2020

---

[1] The Debtor's last four digits of its U.S. federal tax identification number are 6286. The address for the Debtor's headquarters is 27762 Antonio Parkway, Suite L1 #442 Ladera Ranch, CA 92694, although the Debtor no longer maintains a physical office.

## DISCLAIMERS

**This Disclosure Statement provides information regarding the Prepackaged Plan of Reorganization of Security First Corp. dated August 29, 2020 (the "Plan") that the Debtor is seeking to have confirmed by the Bankruptcy Court. The information contained in this Disclosure Statement is included for purposes of soliciting acceptances to, and confirmation of, the Plan and may not be relied on for any other purpose. This Disclosure Statement has not yet been submitted for approval or approved by the Bankruptcy Court; such approval will be sought after the Petition Date in accordance with the applicable provisions of the Bankruptcy Code.**

**This Disclosure Statement contains summaries of certain provisions of the Plan, certain statutory provisions, certain documents relating to the Plan, and certain financial information. Although the Debtor believes that these summaries are fair and accurate and provide adequate information with respect to the documents summarized, such summaries are qualified to the extent that they do not set forth the entire text of, or are inconsistent with, such documents.**

**Distribution projections and other information contained herein and attached hereto are estimates only, and the timing and amount of actual distributions to holders of allowed claims may be affected by many factors that cannot be predicted. Therefore, any analyses, estimates or recovery projections may or may not turn out to be accurate. Although the Debtor has made every effort to be accurate, the financial information contained herein has not been the subject of an audit or other review by an accounting firm. In the event of any conflict, inconsistency, or discrepancy between the terms and provisions in the Plan, this Disclosure Statement, the exhibits annexed to this Disclosure Statement, or the financial information incorporated herein or therein by reference, the Plan shall govern for all purposes. All holders of claims should read this disclosure statement and the Plan in their entirety before voting on the Plan.**

**No legal or tax advice is provided to you by this Disclosure Statement. The Debtor urges each holder of a claim or an interest to consult with its own advisors with respect to any legal, financial, securities, tax or business advice in reviewing this disclosure statement, the plan and each of the proposed transactions contemplated thereby.**

**This Disclosure Statement does not constitute, and may not be construed as, an admission of fact, liability, stipulation, or waiver.**

**No reliance should be placed on the fact that a particular claim or projected objection to a particular claim is, or is not, identified in the Disclosure Statement. The Distribution Trustee and the Reorganized Debtor may seek to object to claims after the confirmation or Effective Date of the Plan irrespective of whether the Disclosure Statement identifies any such objections to claims. The Plan also reserves for the Reorganized Debtor to bring Rights of Action (as defined in the Plan) against any entity or party in interest except those specifically released.**

This Disclosure Statement contains, among other things, summaries of the Plan, certain statutory provisions, certain anticipated events in the Debtor's Chapter 11 Case and certain documents related to the Plan that are attached hereto and incorporated herein by reference. Although the Debtor believes that these summaries are fair and accurate, these summaries are qualified in their entirety to the extent that the summaries do not set forth the entire text of such documents or statutory provisions or every detail of such events. In the event of any inconsistency or discrepancy between a description in this disclosure statement and the terms and provisions of the Plan or any other documents incorporated herein by reference, the Plan or such other documents will govern for all purposes. The Debtor does not represent or warrant that the information contained herein or attached hereto is without any material inaccuracy or omission.

The statements and financial information contained herein have been made as of the date hereof unless otherwise specified. Holders of claims and equity interests reviewing this Disclosure Statement should not infer at the time of such review that there have been no changes in the facts set forth herein. Although the Debtor has made an effort to disclose where changes in present circumstances could reasonably be expected to affect materially the recovery under the Plan, this Disclosure Statement is qualified to the extent certain events do occur.

**IRS Circular 230 Notice**: To ensure compliance with IRS Circular 230, holders of claims and equity interests are hereby notified that: (a) any discussion of U.S. federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of claims or equity interests for the purpose of avoiding penalties that may be imposed on them under the Internal Revenue Code; (b) such discussion is written in connection with the promotion or marketing by the Plan proponents of the transactions or matters addressed herein; and (c) holders of claims and equity interests should seek advice based on their particular circumstances from an independent tax advisor.

This Disclosure Statement has been prepared in accordance with Bankruptcy Code section 1125 and not necessarily in accordance with Federal or State securities laws or other non-bankruptcy law. This Disclosure Statement has not been approved or disapproved by the Securities and Exchange Commission (the "SEC") or any Federal, State, local or foreign regulatory agency, nor has the SEC or any other such agency passed upon the accuracy or adequacy of the statements contained in this Disclosure Statement. Persons or entities holding or trading in, or otherwise purchasing, selling, or transferring, securities of or claims against the Debtor should evaluate this Disclosure Statement and the Plan in light of the purpose for which they were prepared.

The Debtor makes statements in this Disclosure Statement that are considered forward-looking statements under the Federal securities laws. Statements concerning these and other matters are not guarantees of the Debtor's future performance. Such forward-looking statements represent the Debtor's estimates and assumptions only as of the date such statements were made and involve known and unknown risks, uncertainties, and other unknown factors that could impact the Debtor's restructuring plans or cause the actual results of the Debtor's business to be materially different from the historical results or from

any future results expressed or implied by such forward-looking statements. In addition to statements that explicitly describe such risks and uncertainties, readers are urged to consider statements labeled with the terms "believes," "belief," "expects," "intends," "anticipates," "plans," or similar terms to be uncertain and forward-looking. There can be no assurance that the restructuring transaction described herein will be consummated. Creditors and other interested parties should see the section of this Disclosure Statement entitled "Risk Factors" for a discussion of certain factors that may affect the future financial performance of the Reorganized Debtor.

# TABLE OF CONTENTS

**Pages**

**ARTICLE I.  INTRODUCTION**................................................................................................1

1.1.  Purpose of the Disclosure Statement and the Plan. .................................................1

1.2.  Overview of the Transactions Contemplated by the Plan. .......................................1

1.3.  Summary of Treatment of Claims and Interests and Description of Recoveries under the Plan. 2

1.4.  Voting on the Plan. ..................................................................................................3

1.5.  Confirmation and Consummation of the Plan. .........................................................3

1.6.  Additional Plan-Related Documents. .......................................................................4

**ARTICLE II.  BUSINESS DESCRIPTION, PREPETITION INDEBTEDNESS AND EVENTS LEADING TO CHAPTER 11** ...............................................................................5

2.1.  The Debtor's Business...............................................................................................5

2.2.  Debtor's Prepetition Capital Structure and Indebtedness.........................................6

2.3.  Events Leading to Chapter 11 Filing........................................................................7

**ARTICLE III.  ADMINISTRATION OF THE CHAPTER 11 CASE** ...................................9

3.1.  Overview of Chapter 11. ...........................................................................................9

3.2.  Debtor's First Day Pleadings....................................................................................9

3.3.  Debtor's Second Day Pleadings. ...............................................................................9

**ARTICLE IV.  SUMMARY OF PLAN AND CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS THEREUNDER** ......................................10

4.1   Treatment of Unclassified Claims ..........................................................................10

4.2   Classification and Treatment of Claims and Interests .............................................12

4.3   Acceptance or Rejection of the Plan.......................................................................15

4.4   Means for Implementation of the Plan ....................................................................16

4.5   Treatment of Executory Contracts and Unexpired Leases ......................................22

4.6   Provisions Governing Distributions of Property .....................................................25

4.7   Procedures for Resolution of Disputed Claims .......................................................27

4.8   Injunctions, Releases, and Discharge ......................................................................28

4.9   Conditions to Confirmation and Effectiveness........................................................31

4.10  Modification, Revocation or Withdrawal of the Plan..............................................32

4.11  Retention of Jurisdiction..........................................................................................32

**ARTICLE V.  RISK FACTORS**...............................................................................................35

**ARTICLE VI.  CONFIRMATION OF THE PLAN** ...............................................................36

**ARTICLE VII.  TAX CONSEQUENCES OF THE PLAN** ....................................................41

**ARTICLE VIII.  CERTAIN SECURITIES LAW MATTERS**................................................41

**ARTICLE IX.  POSITION OF THE DEBTOR.** .......................................................44

# ARTICLE I.   INTRODUCTION

## 1.1.    Purpose of the Disclosure Statement and the Plan.[2]

Security First Corp., the debtor and debtor-in-possession in the above-referenced case (the "Debtor"), submits this disclosure statement (as may be amended, modified or supplemented, the "Disclosure Statement"), pursuant to section 1125 and 1126 of the Bankruptcy Code, for the sole purpose of providing adequate information (as defined in section 1125) about the *Prepackaged Chapter 11 Plan of Security First Corp. Dated August 29, 2020* (as may be amended, modified or supplemented, the "Plan"), which provides for the resolution of outstanding Claims against and Interests in the Debtor pursuant to the Bankruptcy Code.   The Debtor intends to submit this Disclosure Statement for approval, and the Plan for confirmation, by the Bankruptcy Court at a combined hearing after the Petition Date.   The Debtor will consummate the Plan on the Effective Date.   The summaries of the Plan contained herein shall not be relied upon for any other purpose. A copy of the Plan is attached hereto as Exhibit 1.

The purpose of this Disclosure Statement is to enable Creditors whose Claims are Impaired under the Plan and who are entitled to vote to make an informed decision in exercising their right to accept or reject the Plan. This Disclosure Statement sets forth certain information regarding the Debtor's prepetition operating and financial history, its reasons for seeking protection under the Bankruptcy Code and the anticipated organization, operations, and financing of the Debtor upon its successful emergence from bankruptcy protection. This Disclosure Statement also describes certain terms and provisions of the Plan, certain effects of confirmation of the Plan, certain risk factors associated with the Plan, the business of the Debtor or Reorganized Debtor, and the securities that may be issued under the Plan, including the issuance of New Equity to ESW Capital, LLC ("ESW"), as the Plan Sponsor and the DIP Lender, and the manner in which Distributions will be made under the Plan. In addition, this Disclosure Statement discusses the confirmation process and the voting procedures that holders of Claims entitled to vote under the Plan must follow for their votes to be counted.

Additional copies of this Disclosure Statement can be accessed free of charge by requesting such copies from Debtor's proposed counsel.

## 1.2.    Overview of the Transactions Contemplated by the Plan.

To implement a comprehensive financial restructuring (the "Restructuring"), the Debtor will, no later than August 31, 2020, commence a chapter 11 case (the "Chapter 11 Case") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").   Due to the prepackaged nature of the Plan, the Debtor intends to commence solicitation with respect to the Plan prior to the Petition Date.   Immediately after the Petition Date, the Debtor will file the Plan, this Disclosure Statement, and a motion (the "Procedures Motion") seeking the setting of a combined hearing on approval of the Disclosure Statement, the Debtor's solicitation process, confirmation of the Plan and approval of various procedures related to the foregoing (the "Procedures Order").   The proposed sponsor of the Plan is ESW Capital, LLC, which is also the

---

[2]    Capitalized terms utilized within this Disclosure Statement which are not otherwise defined herein shall have the meanings ascribed to such terms in the attached Plan.

Debtor's DIP Lender.  On August 29, 2020, the Debtor, ESW and the SFC Secured Creditors Trust entered into the restructuring support agreement (together with all exhibits thereto, and as amended, restated, and supplemented from time to time, the "RSA"), the assumption of which is subject to a separate motion to be filed on the Petition Date, that sets forth the principal terms of the Restructuring and requires the parties thereto to support the Plan.

As set forth in the Plan, the Restructuring contemplates a comprehensive in-court restructuring of Claims against and Interests in the Debtor that will preserve the going-concern value of the Debtor's businesses, deleverage the Debtor's balance sheet, maximize recoveries available to all constituents, and provide for an equitable distribution to the Debtor's stakeholders. The Plan Sponsor has offered to acquire the Debtor and its data security business.  Generally, the Plan provides for the following:

(1) the funding of the Cash Consideration by the Plan Sponsor,

(2) the distribution of Available Cash to holders of Allowed Claims, including the payment in full of General Unsecured Claims, in accordance with the Plan and the priority scheme established by the Bankruptcy Code or as otherwise agreed;

(3) upon the monetization of the Debtor's Patent Portfolio after the Effective Date pursuant to the IP Sale Agreement, the distribution of IP Proceeds (i) to the Consenting Lender until the Consenting Lender Claim is paid in full, and thereafter (ii) to the holders of Allowed Common Stock Interests on a pro rata basis; and

(4) the reorganization of the Debtor by retiring, cancelling, extinguishing and/or discharging all Interests in the Debtor and issuing New Equity in the Reorganized Debtor to ESW, in its capacity as the Plan Sponsor or an affiliate and, to the extent that it exercises the Subscription Option, to ESW, in its capacity as the DIP Lender and, to the extent that it exercises the Series A Preferred Exchange Option, in its capacity as the Series A Preferred Stockholder.

### 1.3.    Summary of Treatment of Claims and Interests and Description of Recoveries under the Plan.

The Plan organizes the Debtor's creditor and equity constituencies into groups called "Classes."  For each Class, the Plan describes: (1) the underlying Claim or Interest; (2) the recovery available to the Holders of Claims or Interests in that Class under the Plan; (3) whether the Class is Impaired or Unimpaired under the Plan; (4) the form of consideration, if any, that Holders in such Class will receive on account of their respective Claims or Interests; and (5) whether the Holders of Claims and Interests in such Class are entitled to vote to accept or reject the Plan.

The table below provides a summary of the classification, description, and treatment of Claims and Interests under the Plan.  This information is provided in summary form below for illustrative purposes only and is qualified in its entirety by reference to the provisions of the Plan. Any estimates of Claims or Interests in this Disclosure Statement may vary from the final amounts allowed by the Bankruptcy Court.  Your ability to receive distributions under the Plan depends upon the ability of the Debtor to obtain confirmation of the Plan and satisfy the conditions necessary to consummate the Plan.  The recoveries available to Holders of Claims and Interests are estimates and actual recoveries may materially differ.  Indeed, the recoveries available to Holders of Allowed Claims and Interests could be materially lower when compared to the

estimates provided below. To the extent that any inconsistency exists between the summaries contained in this Disclosure Statement and the Plan, the terms of the Plan shall govern.

For a more detailed description of the treatment of Claims and Interests under the Plan and the sources of satisfaction for Claims and Interests, see Article IV of this Disclosure Statement, entitled "Summary of the Plan and Classification and Treatment of Claims and Interests Thereunder."

| Class | Designation | Impairment | Entitled to Vote | Projected Plan Recovery (%) |
|-------|-------------|------------|------------------|------------------------------|
| Class 1 | Consenting Lender Claim | Impaired | Yes | 10%-100% |
| Class 2 | Other Secured Claims | Unimpaired | No (deemed to accept) | 100% |
| Class 3 | Others Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| Class 4 | General Unsecured Claims | Unimpaired | No (deemed to accept) | 100% |
| Class 5 | Series A Preferred Stock Interests | Impaired | Yes | Unknown |
| Class 6 | Common Stock Interests | Impaired | No (deemed to reject) | Unknown |
| Class 7 | Other Equity Interests | Impaired | No (deemed to reject) | 0% |

### 1.4.    Voting on the Plan.

Class 1 and Class 5 are impaired and entitled to vote on the Plan. Contemporaneous with the prepetition commencement of the Solicitation Process, this Disclosure Statement, the Plan and ballots related to the Plan will be sent to all creditors entitled to vote on the Plan. In addition, as required by the Procedures Order, required notices of the hearing on approval of the Disclosure Statement and confirmation of the Plan will be sent to all known creditors and equity holders. In addition, notice shall be made by publication as approved by the Bankruptcy Court.

### 1.5.    Confirmation and Consummation of the Plan.

Under section 1128(a) of the Bankruptcy Code, the Bankruptcy Court, after notice, may hold a hearing to confirm a plan of reorganization. When the Debtor files the Chapter 11 Case, it will file the Procedures Motion which, among other things will request the Bankruptcy Court to set a date and time as soon as reasonably practicable after the Petition Date for a hearing (such hearing, the "Combined Hearing") to determine whether the Disclosure Statement contains adequate information under section 1125(a) of the Bankruptcy Code and whether the Plan should be confirmed in light of both the affirmative requirements of the Bankruptcy Code and objections, if any, that are timely filed, as permitted by section 105(d)(2)(B)(vi) of the Bankruptcy Code. The Combined Hearing, once set, may be continued from time to time without further notice other than an adjournment announced in open court or a notice of adjournment filed with the Bankruptcy Court and served on those parties who have requested notice under Bankruptcy Rule 2002 and the

entities who have filed an objection to the Plan, if any, without further notice to parties in interest. The Bankruptcy Court, in its discretion and prior to the Combined Hearing, may put in place additional procedures governing the Combined Hearing.  Subject to section 1127 of the Bankruptcy Code, the Plan may be modified, if necessary, prior to, during, or as a result of the Combined Hearing, without further notice to parties in interest.

Additionally, section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan.  In the Procedures Motion, the Debtor, will request that the Bankruptcy Court set a date and time for parties in interest to file objections to the adequacy of the Disclosure Statement and confirmation of the Plan.  All such objections must be filed with the Bankruptcy Court and served on the Debtor and certain other parties in interest in accordance with the Procedures Order so that they are received before the deadline to file such objections.

### (a)    Combined Hearing.

At the Combined Hearing, the Bankruptcy Court will determine whether the Disclosure Statement contains adequate information under section 1125(a) of the Bankruptcy Code and the Plan should be confirmed in light of both the affirmative requirements of the Bankruptcy Code and objections, if any, that are timely filed and subject to satisfaction or waiver of each condition precedent in Article XIII of the Plan.  For a more detailed discussion of the Combined Hearing, *see* Article VI of this Disclosure Statement, entitled "Confirmation of the Plan."

### (b)    Effect of Confirmation and Consummation of the Plan.

Following entry of the Confirmation Order, and subject to satisfaction or waiver of each condition precedent in Section 13.2 of the Plan, the Plan will be consummated on the Effective Date.  Among other things, on the Effective Date, certain release, injunction, exculpation, and discharge provisions set forth in Article XI of the Plan will become effective.  Accordingly, it is important to read the provisions contained in Article XI of the Plan very carefully so that you understand how entry of the Confirmation Order and the occurrence of the Effective Date of the Plan—which effectuates such release, injunction, exculpation, and discharge provisions—will affect you and any Claim or Interest you may hold with respect to the Debtor.  These provisions are described in Section 4.8 of this Disclosure Statement.

### 1.6.    Additional Plan-Related Documents.

The Debtor will file certain documents that provide more details about implementation of the Plan in the Plan Supplement, which will be filed with the Bankruptcy Court no later than September 30, 2020.  The Debtor will serve a notice that will inform all parties that the initial Plan Supplement was filed, list the information included therein, and explain how copies of the Plan Supplement may be obtained.

> *THE FOREGOING IS ONLY A GENERAL OVERVIEW OF THIS DISCLOSURE STATEMENT AND THE MATERIAL TERMS OF, AND TRANSACTIONS PROPOSED BY, THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO, AND SHOULD BE READ IN CONJUNCTION WITH, THE MORE DETAILED DISCUSSIONS APPEARING ELSEWHERE IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED TO THIS DISCLOSURE STATEMENT, INCLUDING THE PLAN.*

## ARTICLE II.    BUSINESS DESCRIPTION, PREPETITION INDEBTEDNESS AND EVENTS LEADING TO CHAPTER 11

### 2.1.    The Debtor's Business.

The Debtor was formed in 2002 and entered the field of using patented and unpatented intellectual property to preserve the secrecy and confidentiality of electronic messaging and data. During its existence, the Debtor has developed or acquired a portfolio of approximately one hundred patents, most of which relate to encryption technology, data security and its applications with respect to preserving the secrecy and confidentiality of electronic information. Despite this extensive portfolio, the Debtor has been unsuccessful in developing commercially viable applications for its technology.

In connection with an expansion of funding to the Debtor during the 2014-2015 timeframe, the Debtor entered into a relationship with IBM Corp., which the Debtor viewed as critical to its success, both from a technological and financial standpoint. The Debtor expended significant funds in an attempt to make the IBM relationship successful. To aid that effort, in early 2017, in connection with the equity and debt reorganization described below, the Debtor decided to replace its long-term CEO with a former IBM employee, James Varner. By the first quarter of 2019, the Company had not achieved the results it sought with IBM and the Board of the Debtor decided to terminate Mr. Varner. On May 31, 2019, IBM notified the Debtor that it was effectively terminating IBM's relationship with the Debtor and in July 2019, IBM formally terminated its relationship with SFC.

Pankaj Parekh was appointed President and Chief Executive Officer of the Debtor in November 2019. Around that time, the Debtor terminated almost all of its employees and engaged a software developer in India to continue software development at a lower cost. The Debtor also attempted to upgrade its core (security) product as management emphasized that upgrades were necessary to compete in the marketplace. SFC's Board advised management that management should seek new investors to fund the Company or a sale of the Company if they could not find new investors. In February 2020, the secured lenders notified the Debtor that they would no longer provide funding to SFC.

SFC currently has three employees, each of whom is an officer of the company. Mr. Parekh serves as President and CEO. Aysegul Berenson is the Chief Financial Officer. Rick Orsini is the Vice President for Software Development.

The Company is currently managed by a two- person Board of Directors.

Due to the COVID-19 pandemic, the Debtor no longer maintains an office location. All three employees work remotely. The Debtor no longer has any hard assets or equipment of any value.

The Debtor maintains one bank account, which holds its nominal remaining operating funds. The Debtor has been unable to pay the expenses associated with maintaining its intellectual property assets since the beginning of July 2020.

The Debtor's statement of financial affairs to be filed in this case indicates that the Debtor has generated total revenues of just $92,206 in the past two calendar years, and has relied almost exclusively on funding from its secured lenders to fund its limited ongoing operations. Other than through the proposed reorganization transaction (and any future patent sale that is able to be negotiated following confirmation of the Plan), the Debtor has no expectation of generating future revenue.

### 2.2.    Debtor's Capital Structure.

From the time of its formation in 2002 through February 2017 approximately $140 million was invested in or loaned to the Debtor, the last $70 million of which was in the form of secured debt.

In February 2017, the Debtor completed an out-of-court equity and debt reorganization, in which (i) approximately $70 million of prior-invested equity was converted into a "home run" warrant, which warrant would have value only if the Debtor's value increased significantly from that date, and (ii) holders of the Company's then-existing secured debt of approximately $70 million converted their secured debt into the Company's new equity, and (iii) certain of the equity investors agreed to fund approximately $15 million of additional equity. The full additional equity commitment was completed in July 2018. Nevertheless, the Debtor's financial picture did not improve as anticipated, and shortly after the addition equity infusion was completed, SFC required additional funding to remain viable.

Beginning in September 2018, certain of the equity investors (the "Secured Lenders") agreed to continue to fund the Debtor, but only pursuant to Promissory Notes secured by all of the assets of the Debtor. Between September 2018 and February 2020, the Secured Lenders loaned a total principal amount of $12,975,00 pursuant to such Secured Promissory Notes, which notes represent the Company's entire secured debt as of the Petition Date. To date, the Debtor has not achieved profitability on a GAAP or cashflow basis. As of the Petition Date, the Debtor estimates that it may possess federal net operating loss carryforwards in excess of $150 million; provided that these net operating loss carryforwards are subject to limitations and restrictions that may limit or even eliminate their availability. As of the Petition Date, the Debtor has approximately $25,000 in remaining cash on hand, and no means to repay its secured debt.

On August 14, 2020, ESW purchased forty three thousand seven hundred (43,700) shares of the Company's Series A Preferred Stock, par value $0.0001 per share (the "Series A Preferred Stock"), for $0.5721 per share, for the aggregate purchase price of $25,000.77.

As of August 28, 2020, the Secured Lenders' Promissory Notes were assigned to the SFC Secured Creditors Trust, which now holds all of the secured debt of the Company.

### 2.3.    Events Leading to Chapter 11 Filing.

Beginning in the first quarter of 2020 through mid-May, management engaged in a comprehensive full-scale search for new investments in and/or a purchaser of the Debtor.  In connection with this search, the Company canvassed a wide range of potential partners, including public companies, private companies, venture capitalists, investment bankers and private equity firms.  Over time, the Company determined that it was unable to attract additional investment; no existing or potential investor was willing to serve as the lead investor for another round of investment.  It became clear to the Debtor that a sale of the Debtor was the most realistic option, although most of the companies that were contacted had no interest in the Debtor because it lacked any existing customers.  The Debtor eventually had discussions with several entities regarding proposals for a potential sale of the Company, including the proposal from ESW.  In evaluating the proposals, SFC determined that the proposal from ESW represented the best possible scenario for SFC stakeholders, principally its secured and general unsecured creditors.

On May 27, 2020, after a lengthy series of negotiations, the Debtor entered into a Letter of Intent with ESW (the "ESW LOI"), in connection with a proposed transaction in which SFC would become a wholly-owned subsidiary of ESW as part of the Reorganization.  The ESW LOI contemplated that the Debtor file a petition under Chapter 11 of the Bankruptcy Code and seek Court approval of the Reorganization through confirmation of the Plan.

The Debtor, ESW, and the SFC Secured Creditors Trust entered into a Restructuring Support Agreement (the "RSA") on August 29, 2020 pursuant to which they all agreed to support the Restructuring Transaction which is set forth in the Plan.  Pursuant to the RSA, ESW has agreed to provide DIP Financing of $1,000,000, to cover the ordinary course operating and administrative expenses associated with preserving the Debtor's operations and running a chapter 11 process through a plan effective date.

The Plan generally provides for ESW to provide consideration of (i) $6,000,000 in Cash to be funded by the Plan Sponsor on the Effective Date, plus (ii) additional Cash to be funded by the Plan Sponsor in an amount equal to the undrawn amount of the DIP Financing as of the Effective Date.  That consideration will be distributed through the Plan to pay administrative, priority and unsecured creditors in full, and then to the SFC Secured Creditors Trust and the Officers, pursuant to the Officer Agreements (as discussed further below).  Additional consideration will be payable to the Debtor's stakeholders from a future sale of SFC's intellectual property, if such a sale occurs within seven years following confirmation of the Plan.  The additional consideration would be distributed first to the SFC Secured Creditors Trust, and then if fully satisfied, to the Allowed Equity Interests on a pro rata basis.

Pursuant to the Plan, all existing equity of the Debtor will be retired, cancelled, extinguished and/or discharged and ESW will acquire 100% of the equity of the reorganized Debtor, in its capacities as the Plan Sponsor, DIP Lender (to the extent that it exercises the Subscription Option), and the Series A Preferred Stockholder (to the extent that it exercises the Series A Preferred Exchange Option). A detailed description of the Subscription Option is contained on page 46 of the Plan, and a detailed description of the Series A Preferred Exchange Option is contained on page 45 of the Plan.

Upon the Effective Date of the Plan, and barring a default in connection with the DIP Financing, to the extent any amount of outstanding DIP Lender obligations remain after the DIP Lender exercises the Subscription Option, the remainder of the DIP obligations shall, at the option of the DIP Lender, either be repaid in cash funded and paid by the Plan Sponsor on the Effective Date, separately and in addition to the Cash Consideration being paid under the Plan on the Effective Date, or reduced on a dollar-for-dollar basis by agreement between the DIP Lender and the Plan Sponsor. In no event will the exercise of the Subscription Option, either in whole or in part, reduce the amount of the Cash Consideration paid by the Plan Sponsor.

As noted above, significant sums have been invested in SFC over an 18 year span. SFC stakeholders are in agreement that additional software development is necessary for SFC product upgrades, and SFC's existing investor base is unwilling to be the lead investor in any such funding. Moreover, absent entry into the Restructuring Support Agreement and filing of the Bankruptcy Case, there are no funds to pursue further business, and a high likelihood the Secured Lenders could simply foreclose on their collateral, an outcome which would result in no recovery for unsecured creditors. Accordingly, SFC and its stakeholders all believe that Reorganization presents the best scenario for the Company, in order to preserve its assets, pay its creditors and to provide some return for its secured creditors.

### 2.4.    Prepetition Agreements with Officers.

When it became apparent that the Debtor would not be able to attract additional investment, SFC's Board tasked its three officers-- Mr. Orsini, Ms. Berenson and me (hereinafter, the "Officers")-- with finding a third-party buyer and negotiating a suitable transaction for the sale of the Company. The Board orally agreed that the company would pay the Officers additional compensation in the form of consulting fees if an acceptable transaction was consummated, and the consulting fees would be payable as a percentage of the net proceeds received by the Company through the transaction. The Restructuring Transaction negotiated with ESW was accepted by the Board in the form set forth in the ESW LOI, after which the Board negotiated the appropriate consulting fee percentages with the Officers and required that they remain with the Company through the entire Chapter 11 reorganization process. Following these negotiations, each of the Officers entered into written agreements with SFC (the "Officer Agreements") on August 29, 2020,[3] pursuant to which SFC agrees to pay a percentage of the Remaining Cash (as defined in the Plan) to each of the Officers. The Officer Agreements also contain mutual releases. Following the execution of the Officer Agreements, all of the then-existing members of the Company's Board resigned from their positions, and two current officers of SFC, Rick Orsini (V.P., Software Engineering) and Mr. Parekh (CEO) have been appointed as SFC's new Board members for the duration of the Bankruptcy Case.

---

[3] The board that negotiated the Officer Agreements consisted of the same board members who agreed to the consulting fees in the event of a successful transaction.

## ARTICLE III.   ADMINISTRATION OF THE CHAPTER 11 CASE

### 3.1.   Overview of Chapter 11.

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code.  In addition to permitting debtor rehabilitation, chapter 11 promotes equality of treatment for similarly situated holders of claims and equity interests, subject to the priority of distributions prescribed by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the filing of a chapter 11 petition.  The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The consummation of a plan is the principle objective of a chapter 11 case.  A plan sets forth the means for satisfying claims against and interests in a debtor.  Confirmation of a plan by the Bankruptcy Court makes the plan binding upon the debtor, any entity acquiring property under the plan, any holder of a claim against or equity interest in a debtor and all other entities as may be ordered by the Bankruptcy Court in accordance with the applicable provisions of the Bankruptcy Code.  Subject to certain limited exceptions, the order approving confirmation of a plan discharges a debtor, to the fullest extent permitted by applicable law, from any debt that arose prior to the date of confirmation of the plan and substitutes therefor the obligations specified under the confirmed plan.

Pursuant to section 1125 of the Bankruptcy Code, acceptance or rejection of a plan may not be solicited after the commencement of a chapter 11 case until such time as a bankruptcy court has approved a disclosure statement as containing adequate information.  Pursuant to section 1125(a) of the Bankruptcy Code, "adequate information" is information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding the plan.  The Debtor is submitting this Disclosure Statement in satisfaction of the applicable disclosure requirements under section 1125 of the Bankruptcy Code.

### 3.2.   Debtor's First Day Pleadings.

On or before August 31, 2020, the Debtor will commence the Chapter 11 Case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Shortly thereafter, the Debtor will file various "first day" motions seeking, among other things: (i) authority to incur post-petition financing and granting certain other related relief; (ii) approval of the Procedures Motion; and (iii) a motion to set a deadline to file claims against the Debtor.

### 3.3.   Debtor's Second Day Pleadings.

Contemporaneously with, or shortly following, the filing of the "first day pleadings," the Debtor will file certain "second day pleadings" with the Bankruptcy Court.  In particular, the Debtor will file (i) a motion seeking authority to assume the Restructuring Support Agreement and (ii) an application to approve the retention of Sullivan Hazeltine Allinson, LLP as counsel for the Debtor.

## ARTICLE IV.    SUMMARY OF PLAN AND CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS THEREUNDER

This Article provides a summary of the structure and means for implementation of the Plan and the classification and treatment of Claims and Interests under the Plan and is qualified in its entirety by reference to the Plan (as well as the Exhibits thereto and definitions therein).

The statements contained in this Disclosure Statement do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein, and reference is made to the Plan and to such documents for the full and complete statement of such terms and provisions.

The Plan itself and the documents referred to therein control the actual treatment of Claims against and Interests in the Debtor under the Plan and will, upon the occurrence of the Effective Date, be binding upon all holders of Claims against and Interests in the Debtor, the Debtor's estate, the Reorganized Debtor, all parties receiving property under the Plan, and other parties in interest. In the event of any conflict, inconsistency, or discrepancy between this Disclosure Statement and the Plan, the Plan Supplement, and/or any other operative document, the terms of the Plan, Plan Supplement, and/or such other operative document, as applicable, shall govern and control; provided that, in any event, the terms of the Plan shall govern and control over all other related documents.

### 4.1    Treatment of Unclassified Claims

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims (including Professional Compensation Claims, U.S. Trustee Fees, and Ordinary Course Liabilities) and Priority Tax Claims have not been classified and the respective treatment of such unclassified Claims is set forth in Article IV of the Plan.

[Redundant].

#### (a)    Administrative Claims

i.    General:  Except with regards to Ordinary Course Liabilities (the treatment of which is described below and in Section 4.3 of the Plan), subject to the bar date provisions in the Plan, unless otherwise agreed to by the parties, each holder of an Allowed Administrative Claim shall receive Cash equal to the unpaid portion of such Allowed Administrative Claim within ten (10) days after the later of (a) the Effective Date, (b) the Allowance Date, or (c) such other date as is mutually agreed upon by the Debtor, the Plan Sponsor and the holder of such Claim.

ii.    Bar Date for Administrative Claims:  Except as otherwise provided in Article IV of the Plan, requests for payment of Administrative Claims must be included within an application (setting forth the amount of, and basis for, such Administrative Claims, together with documentary evidence) and Filed and served on respective counsel for the Debtor, the Distribution Trust and Plan Sponsor no later than the Administrative Claim Bar Date or by such earlier deadline governing a particular Administrative Claim contained in an order of the Bankruptcy Court entered before the Effective Date.  Holders of Administrative Claims that are required to File a request for payment of such Claims and that do not File such requests by the applicable bar date shall be

forever barred from asserting such Claims against the Debtor or any of its property, absent order of the Bankruptcy Court to the contrary.

### (b) Professional Compensation Claims

All Professional Compensation Claims must be filed with the Bankruptcy Court and served on the Reorganized Debtor, the Distribution Trust, the U.S. Trustee and the Post-Confirmation Service List, no later than thirty (30) days after the Effective Date. **FAILURE TO FILE AND SERVE FINAL FEE APPLICATIONS TIMELY AND PROPERLY SHALL RESULT IN THE UNDERLYING PROFESSIONAL FEE CLAIMS BEING FOREVER BARRED AND DISCHARGED**. Objections to Professional Compensation Claims, if any, must be filed and served pursuant to the procedures set forth in the Confirmation Order no later than forty-five (45) days after the Effective Date or such other date as may be established by the Bankruptcy Court. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Case, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court. All holders of Professional Compensation Claims shall be paid in full, in Cash from the Distribution Reserve, in such amounts as are Allowed by the Bankruptcy Court. The Reorganized Debtor and the Distribution Trustee are authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

Each holder of a Professional Compensation Claim shall provide the Debtor with an estimate of the unpaid amount of such Professional Compensation Claim not later than seven (7) calendar days prior to the anticipated Effective Date; provided, however, that such estimates shall be used solely for administrative purposes and determining the amount of the Distribution Reserve, shall not be binding on the holders of Professional Compensation Claims and shall not in any way limit, cap, or reduce the amount of the Professional Compensation Claims.

Any professional fees and reimbursements or expenses incurred by the Reorganized Debtor subsequent to the Effective Date may be paid by the Reorganized Debtor without application to the Bankruptcy Court. Any professional fees and reimbursements or expenses incurred by the Distribution Trustee subsequent to the Effective Date may be paid by the Distribution Trustee without application to the Bankruptcy Court.

### (c) U.S. Trustee Fees

All fees payable pursuant to 28 U.S.C. § 1930 shall be paid in Cash from the DIP Financing or otherwise from the Consideration equal to the amount of such fees when due or no later than the Effective Date. Post-petition U.S. Trustee fees shall be paid and post-confirmation reports shall be filed as required by 28 U.S.C. § 1930 until the Chapter 11 Case is closed, converted or dismissed, and failure to do either timely is a material default pursuant to section 1112 of the Bankruptcy Code.

### (d) Ordinary Course Liabilities

All Ordinary Course Liabilities are deemed to be Allowed Claims to the extent set forth in the Approved Budget. Holders of Administrative Claims on account of Ordinary Course

Liabilities are not required to file or serve any request for payment of the Ordinary Course Liability. The Debtor shall continue to pay each Ordinary Course Liability accrued prior to the Effective Date, pursuant to the payment terms and conditions of the particular transaction giving rise to the Ordinary Course Liability and the Approved Budget. To the extent that a holder of an Administrative Claim, on account of Ordinary Course Liability which accrued prior to the Effective Date, did not submit an invoice for the Ordinary Course Liability to the Debtor prior to the Effective Date, the holder must submit the invoice to the Distribution Trustee in the ordinary course of business, pursuant to the terms and conditions of the particular transaction giving rise to the Ordinary Course Liability. The Distribution Trustee shall remit payment on the Ordinary Course Liability within fifteen (15) days of receipt of the invoice. In the event that the Reorganized Debtor pays any Ordinary Course Liability accrued prior to the Effective Date, the Distribution Trust shall reimburse the Reorganized Debtor for such payment promptly upon request.

The DIP Lender Claim is Allowed in full. Pursuant to the Subscription Option, the DIP Lender shall have the option, on account of being the holder of the Allowed DIP Lender Claim, to convert a portion of the outstanding Allowed DIP Lender Claim into shares of New Equity at a rate of 10% of the Allowed DIP Lender Claim for 60 shares of New Equity, up to a maximum of 100% of the Allowed DIP Lender Claim for 600 shares out of the total 1000 shares of New Equity; provided that the Plan Sponsor, the DIP Lender and the Series A Preferred Stockholder shall coordinate to ensure that the sum of New Equity to be acquired by (i) the Plan Sponsor on account of the Plan Consideration, *plus* (ii) the DIP Lender pursuant to the Subscription Option, and (iii) the Series A Preferred Stockholder pursuant to the Series A Preferred Exchange Option shall equal 1,000 shares in the aggregate. To the extent any amount of Allowed DIP Lender Claim remains after the DIP Lender exercises the Subscription Option, the remainder of its Allowed DIP Lender Claim shall be repaid in Cash funded and paid by the Plan Sponsor on the Effective Date, separately and in addition to the Consideration being paid by the Plan on the Effective Date, or reduced on a dollar-for-dollar basis by agreement between the DIP Lender and the Plan Sponsor. For the avoidance of doubt, in no event will the partial exercise of the Subscription Option reduce the amount of the Consideration paid by Plan Sponsor. On the Effective Date, all liens and interests granted in exchange for or in connection with the DIP Note and/or under the DIP Order shall be deemed discharged, cancelled, and released and shall be of no further force and effect.

(e)     **Allowed Priority Tax Claims**

Each Holder of an Allowed Priority Tax Claim against Debtor shall receive in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim (i) Cash equal to the amount of such Allowed Priority Tax Claim on the Effective Date, (ii) payment in full through the fifth anniversary of the Petition Date, plus interest at a rate determined in accordance with section 511 of the Bankruptcy Code, or (iii) such other less favorable treatment to the Holders of an Allowed Priority Tax Claim as to which the Debtor, the Plan Sponsor, and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

**4.2     Classification and Treatment of Claims and Interests**

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, a Claim or Interest is placed in a particular Class for all purposes, including without limitation, voting, confirmation and receiving Distributions under the Plan only to the extent (i) the Claim or Interest qualifies within

the description of that Class; (ii) the Claim or Interest is an Allowed Claim or Allowed Interest (or temporarily allowed Claim or Interest for voting purposes) in that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Class or Classes; and (iii) the Claim or Interest has not been paid, released, or otherwise compromised before the Effective Date.  A Claim or Interest which is not an Allowed Claim or Allowed Interest, including a Disputed Claim, is not in any Class, and, notwithstanding anything to the contrary contained in the Plan, no Distribution shall be made on account of any Claim or Interest which is not an Allowed Claim or Allowed Interest.

**Class 1:  Consenting Lender Claim**

    **(a)**    <u>Classification</u>:  Class 1 consists of all Consenting Lender Claim against the Debtor.

    **(b)**    <u>Treatment</u>:  The holder of the Allowed Consenting Lender Claim against the Debtor shall receive on or about the Effective Date, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Consenting Lender Claim, the Consenting Lender Recovery.

    **(c)**    <u>Impairment and Voting</u>:  The holder of the Allowed Consenting Lender Claim is impaired, and the holder of such Claim is entitled to vote to accept or reject the Plan on account of such Claims pursuant to section 1126(a) of the Bankruptcy Code.

**Class 2:  Other Secured Claims**

    **(a)**    <u>Classification</u>:  Class 2 consists of all Allowed Other Secured Claims, if any, against the Debtor.

    **(b)**    <u>Treatment</u>:  Each holder of an Allowed Other Secured Claims against the Debtor shall receive on or about the Effective Date, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Other Secured Claims, at the option of the Plan Sponsor: (i) payment in full in Cash; (ii) the collateral securing its Allowed Other Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (iii) reinstatement of such Allowed Other Secured Claim; or (iv) such other treatment rendering such Allowed Other Secured Claim unimpaired.

    **(c)**    <u>Impairment and Voting</u>:  Allowed Other Secured Claims are unimpaired, and the holders of such Claims are not entitled to vote to accept or reject the Plan on account of such Claims and will be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**Class 3: Other Priority Claims**

    **(a)**    <u>Classification</u>:  Class 3 consists of all Other Priority Claims against the Debtor.

    **(b)**    <u>Treatment</u>:  Each holder of an Allowed Other Priority Claim against the Debtor shall receive on or about the Effective Date, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Other Priority Claim, (i) Cash equal to the amount of such Allowed Other Priority Claim on the Effective Date, or (ii) such other treatment to the holder of an Allowed Other Priority Claim as to which the Plan Sponsor and the holder of such Allowed Other Priority Claim shall have agreed upon in writing.

    **(c)**    <u>Impairment and Voting</u>:  Allowed Other Priority Claims are unimpaired, and the holders of such Claims are not entitled to vote to accept or reject the Plan on account of such Claims and will be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**Class 4: General Unsecured Claims**

    **(a)**    <u>Classification</u>:  Class 4 consists of all General Unsecured Claims against the Debtor.

    **(b)**    <u>Treatment</u>:  On or about the Effective Date, each holder of an Allowed General Unsecured Claim shall receive, on account of and in full and complete settlement, release and discharge of, and in exchange for its Allowed General Unsecured Claim, payment in full in Cash.

<u>Impairment and Voting</u>:  Allowed General Unsecured Claims are unimpaired, and the holders of such Claims are not entitled to vote to accept or reject the Plan on account of such Claims and will be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**Class 5: Series A Preferred Stock Interests**

    **(a)**    <u>Classification</u>: Class 5 consists of all Series A Preferred Stock Interests in the Debtor.

<u>Treatment</u>:  Each holder of an Allowed Series A Preferred Stock Interest in the Debtor shall receive on or about the Effective Date, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Series A Preferred Stock Interest, the Series A Preferred Stock Treatment.

<u>Impairment and Voting</u>:  Allowed Series A Preferred stock Interests are impaired, and the holders of such Series A Preferred Interests are entitled to vote to accept or reject the Plan on account of such Series A Preferred Interests pursuant to section 1126(a) of the Bankruptcy Code.

**Class 6: Common Stock Interests**

> **(a)** <u>Classification</u>:  Class 6 consists of all Common Stock Interests in the Debtor.

<u>Treatment</u>:  Class 6 Common Stock Interests shall be automatically cancelled, released, and extinguished without further action by the Debtor or the Reorganized Debtor, and any and all obligation of the Debtor and the Reorganized Debtor thereunder shall be discharged.  Each holder of an Allowed Common Stock Interests in the Debtor shall receive on or about the Effective Date, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Common Stock Interests, its Pro Rata Share of the Equity IP Recovery (if any).

<u>Impairment and Voting</u>:  Allowed Common Stock Interests are impaired, and the holders of such Common Stock Interests deemed to reject the Plan.

**Class 7: Other Equity Interests**

> **(a)** <u>Classification</u>:  Class 7 consists of all Other Equity Interests issued by the Debtor.

<u>Treatment</u>:  Class 7 Other Equity Interests shall be automatically cancelled, released, and extinguished without further action by the Debtor or the Reorganized Debtor, and any and all obligation of the Debtor and the Reorganized Debtor thereunder shall be discharged.  Holders of Class 7 Other Equity Interests shall neither receive nor retain any property under the Plan on account of such Other Equity Interests.

<u>Impairment and Voting</u>:  Allowed Other Equity Interests are impaired, and the holders of such Other Equity Interests are deemed to reject the Plan.

**4.3    Acceptance or Rejection of the Plan**

> **(a)    Impaired Classes Entitled to Vote**

Holders of Claims in Classes 1 and 5 are impaired and entitled to vote as a Class to accept or reject the Plan.  Accordingly, only the Holders of Claims in Classes 1 and 5 shall be solicited with respect to the Plan.

> **(b)    Acceptance by Classes 1 and 5**

In accordance with Bankruptcy Code section 1126(c), and except as provided in Bankruptcy Code section 1126(e), an impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.

In accordance with Bankruptcy Code section 1126(d), and except as provided in Bankruptcy Code section 1126(e), an impaired Class of Interest shall have accepted the Plan if the

Plan is accepted by holders of at least two-thirds (⅔) in amount of Allowed Interests that have timely and properly voted to accept or reject the Plan.

### (c)    Presumed Acceptances by Classes 2, 3 and 4

Holders of Claims in Classes 2, 3 and 4 are unimpaired.  Under Bankruptcy Code section 1126(f), holders of such unimpaired Claims are conclusively presumed to have accepted the Plan, and the votes of such unimpaired Claim Holders shall not be solicited.

### (d)    Deemed Rejection by Classes 6 and 7

Classes 6 and 7 are impaired under the Plan.  Class 7 is receiving no distribution under the Plan and is deemed to reject the Plan under section 1126(g) of the Bankruptcy Code.  Class 6 is receiving a potential recovery from the proceeds of a sale/monetization of the patent portfolio, to the extent that the Consenting Lender Claim (Class 1) is paid in full first.  However, given that Class 6 will not receive any recovery on the Effective Date, and it is uncertain whether they will receive any recovery in the future from the IP Sale, to avoid the time and expense of soliciting the votes of holders in Class 6, the Plan deems such Class to have rejected the Plan and the holders of Claims in such Class are not entitled to vote to accept or reject the Plan.  As no class junior to Class 6 is to receive any distribution under the Plan, the Debtor intends to confirm the Plan over the deemed rejection of Classes 6 and 7 under the provisions of section 1129(b) of the Bankruptcy Code.

### (e)    Elimination of Classes for Voting Purposes

Any Class of Claims or Interests that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim, an Allowed Interest, or a Claim or Interest temporarily allowed under Rule 3018 of the Bankruptcy Rules shall be deemed deleted from the Plan for purposes of voting on acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

### (f)    Voting Classes; Deemed Acceptance by Non-Voting Classes

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by such Class.  For clarification, the only impaired classes eligible to vote are Class 1 (Consenting Lender Claim) and Class 5 (Series A Preferred Stock Interests).

### (g)    Controversy Concerning Classification, Impairment or Voting Rights

In the event a controversy or dispute should arise involving issues related to the classification, impairment or voting rights of any Creditor or Interest Holder under the Plan, whether before or after the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy.  Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes (i) the amount of any contingent or unliquidated Claim the fixing or liquidation of, as the case may be, would unduly delay the administration of the Chapter 11 Case and (ii) any right to payment arising from an equitable remedy for breach of performance.

### 4.4    Means for Implementation of the Plan

#### (a)    Continued Corporate Existence

Except as otherwise provided in the Plan, the Reorganized Debtor will continue to exist after the Effective Date as a corporate entity, with all of the powers of a corporation under applicable law in the jurisdiction in which the Debtor is incorporated and pursuant to its Charter Documents in effect before the Effective Date, as such documents are amended by or pursuant to the Plan.

Upon the Effective Date, and without any further action by the shareholders, directors, or officers of the Reorganized Debtor, the Reorganized Debtor's Charter Documents shall be deemed amended (a) to the extent necessary, to incorporate the provisions of the Plan, and (b) to prohibit the issuance by the Reorganized Debtor of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of such Charter Documents as permitted by applicable law, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval other than any requisite filings required under applicable state, provincial or federal law.  The Charter Documents shall be filed with the Plan Supplement.

#### (b)    Management and Board of Directors

The Plan Sponsor may nominate and elect new members for the board of directors of the Reorganized Debtor in accordance with the Reorganized Debtor's Charter Documents. The identity of such new members shall be disclosed in the Plan Supplement prior to the Plan Supplement Deadline.  Upon the Effective Date, the current members of the Debtor's board of directors shall no longer serve in such capacity and shall be discharged of all duties in connection therewith.

#### (c)    Arrangements with the Distribution Trustee

By the Plan Supplement Deadline, the Debtor shall file with the Bankruptcy Court a disclosure identifying the Distribution Trustee under the Distribution Trust.  At the Confirmation Hearing, the Bankruptcy Court shall ratify such Distribution Trustee.  All compensation for the Distribution Trustee shall be paid from the Distribution Trust Assets in accordance with the Distribution Trust Agreement.  The approved person shall serve as the Distribution Trustee on execution of the Distribution Trust Agreement at the Closing.

#### (d)    Abandonment of Abandoned Assets

Any Abandoned Assets shall be deemed abandoned as of the Effective Date pursuant to Bankruptcy Code section 554 without further order of the Bankruptcy Court.  The filing of the Plan shall constitute the filing of a motion to abandon pursuant to 11 U.S.C. § 554 and relinquish the Abandoned Assets.  Entry of the Confirmation Order shall constitute (i) approval, pursuant to Bankruptcy Code section 554, of the abandonment of the Abandoned Assets and (ii) authorization to relinquish any interest the Debtor holds in the Abandoned Assets.

#### (e)    The Closing

The Closing of the transactions required and contemplated under the Plan shall take place on the Effective Date at the offices of Goulston & Storrs PC, 885 Third Avenue, 18th Floor, New York, New York 10022, or at such other place identified in a notice provided to those parties listed in Section 13.12 of the Plan.  The Debtor and Plan Sponsor may reschedule the Closing by making an announcement at the originally scheduled Closing of the new date for the Closing.  A notice of the rescheduled Closing shall be filed with the Bankruptcy Court and served on the parties identified in Section 13.12 of the Plan within two (2) days after the originally scheduled Closing. All documents to be executed and delivered by any party as provided in Article VI of the Plan and all actions to be taken by any party to implement the Plan as provided therein shall be in form and substance satisfactory to the Debtor and Plan Sponsor.  The following actions shall occur at or before the Closing (unless otherwise specified), and shall be effective on the Effective Date:

(i)    Execution of Documents and Corporate Action.  The Debtor shall deliver all documents and perform all actions reasonably contemplated with respect to implementation of the Plan.  The Debtor, or its designee, is authorized (i) to execute on behalf of the Debtor, in a representative capacity and not individually, any documents or instruments after the Confirmation Date or at the Closing that may be necessary to consummate the Plan and (ii) to undertake any other action on behalf of the Debtor to consummate the Plan.  Each of the matters provided for under the Plan involving the corporate structure of the Debtor or corporate action to be taken by or required of the Debtor will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and (to the extent taken before the Effective Date) ratified in all respects without any requirement of further action by stockholders, creditors, or directors of the Debtor.  On the Effective Date, all matters provided for in the Plan involving the corporate structure of the Reorganized Debtor, and all corporate actions required by the Debtor and the Reorganized Debtor in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtor or the Reorganized Debtor.  For purposes of effectuating the Plan, none of the transactions contemplated in the Plan shall constitute a change of control under any agreement, contract, or document of the Debtor.

(ii)    Release of Liens.  Upon request by the Debtor, the Reorganized Debtor or the Plan Sponsor, any Person holding a Lien in any of the Debtor's Property shall execute any lien release or similar document(s) required to implement the Plan or reasonably requested by the Debtor, the Reorganized Debtor or the Plan Sponsor in a prompt and diligent manner.  Notwithstanding the foregoing, the Debtor, the Reorganized Debtor or the Plan Sponsor is authorized to execute any lien release or similar document(s) required to implement the Plan.

(iii)    Cancellation of Interests.  On the Effective Date, all existing Interests of Debtor shall be retired, cancelled, extinguished and/or discharged in accordance with the terms of the Plan. Except as otherwise provided in the Plan or the Plan Supplement, on the Effective Date: (1) the obligations of the Debtor under any certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Interest shall be cancelled as to the Debtor and the Reorganized Debtor shall not have any continuing obligations thereunder and (2) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds,

purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor shall be released and discharged.

(iv)    <u>Issuance of New Equity of Reorganized Debtor</u>. On the Effective Date, 1,000 shares of New Equity of the Reorganized Debtor shall be issued to the Plan Sponsor, and to the DIP Lender under and subject to the Subscription Option, and to the Series A Preferred Stockholder under and subject to the Series A Preferred Exchange Option, in the total amount of 1,000 shares, representing 100% of the equity of the Reorganized Debtor.  The New Equity shall be free and clear of all Liens, Claims, interests, and encumbrances of any kind, except as otherwise provided in the Plan. All the shares of the New Equity issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.  On the Effective Date, none of the New Equity will be listed on a national securities exchange.  The Reorganized Debtor may take all necessary actions, if applicable, after the Effective Date to suspend any requirement to (i) be a reporting company under the Securities Exchange Act, and (ii) file reports with the Securities and Exchange Commission or any other entity or party.

(v)    <u>Funding of the Cash Consideration</u>.  On the Effective Date, the Plan Sponsor shall contribute to the Distribution Trust an amount of Cash equal to the Cash Consideration.  Funding of the Cash consideration is not subject to any financing contingency.  The Cash Consideration shall be used to fund Distributions, post-confirmation quarterly fees pursuant to 28 U.S.C. § 1930(a)(6), and all other costs and expenses contemplated by the Plan, including the costs and expenses of the Distribution Trust.  To the extent any amount of Allowed DIP Lender Claim remains after the DIP Lender exercises the Subscription Option, the remainder of its Allowed DIP Lender Claim shall be repaid in Cash funded and paid by the Plan Sponsor on the Effective Date, separately and in addition to the Consideration on the Effective Date, or reduced on a dollar-for-dollar basis by agreement between the DIP Lender and the Plan Sponsor. For the avoidance of doubt, in no event will the DIP Lender's exercise of the Subscription Option or the Series A Preferred Stockholder's exercise of the Series A Preferred Exchange Option reduce the amount of the Consideration paid by Plan Sponsor.

(vi)    <u>Execution and Ratification of the Distribution Trust Agreement</u>.  On the Effective Date, the Distribution Trust Agreement shall be executed by all parties thereto.  The Distribution Trust Agreement shall be provided in the Plan Supplement.  Each holder of a Claim shall be deemed to have ratified and become bound by the terms and conditions of the Distribution Trust Agreement.

(vii)    <u>Transfer of Distribution Trust Assets</u>. All property of the Debtor constituting the Distribution Trust Assets shall be conveyed and transferred by the Debtor to the Distribution Trust, free and clear of all Liens, Claims, Interests, and encumbrances.

(viii)    As set forth in the IP Sale Agreement, immediately following the Effective Date, the Reorganized Debtor shall enter into the IP Sale Agreement with the SFC Secured Creditors Trust pursuant to which the Reorganized Debtor will authorize the Company Stakeholders to market the Patent Rights (as defined in the IP Sale Agreement) and solicit offers from third parties for such third parties to purchase one or more of the Patent Rights in efforts to monetize SFC's intellectual property portfolio for the duration of the IP Sale Period, subject to an ongoing perpetual

license to the Patent Portfolio in favor of Plan Sponsor. The terms of the IP Sale shall be governed by the IP Sale Agreement. Upon the occurrence of an IP Sale, the IP Proceeds shall be remitted to the Distribution Trust for distribution (i) to the Consenting Lender on a pro rata basis until the Consenting Lender Claim is paid in full, and thereafter (ii) to the holders of Allowed Common Stock Interests on a pro rata basis. For the avoidance of doubt, the Patent Portfolio shall not be construed as a Distribution Trust Asset. Rather, the IP Proceeds shall be Distribution Trust Assets to be distributed by the Distribution Trustee to the Consenting Lender and holders of Allowed Common Stock Interests in the manner set forth in the Plan. The Reorganized Debtor shall have the authority, but not the obligation, to sell the IP Portfolio without any further notice to or action, order or approval by the Bankruptcy Court.

### (f)    Tax Treatment of the Distribution Trust

The Distribution Trust established under the Plan is established for the purpose of making Distributions to holders of Allowed Claims from the Distribution Trust Assets transferred to the Distribution Trust (or from the proceeds of such Distribution Trust Assets, as applicable) and performing related and incidental functions referenced in the Distribution Trust Agreement. The Distribution Trust shall have no objective of continuing or engaging in any trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the trust. The purpose of the Distribution Trust is to provide a mechanism for the liquidation of the Distribution Trust Assets, and to distribute the Consideration and the proceeds of the liquidation, net of all claims, expenses, charges, liabilities, and obligations of the Distribution Trust, to the Beneficiaries in accordance with the terms of the Plan. No business activities will be conducted by the Distribution Trust other than those associated with or related to the liquidation of the Distribution Trust Assets. It is intended that the Distribution Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of the Treasury Regulations Section 301.7701-4(d). All parties and Beneficiaries shall treat the transfers in trust described herein as transfers to the Beneficiaries for all purposes of the Internal Revenue Code of 1986, as amended (including Sections 61(a)(12), 483, 1001, 1012, and 1274 thereof). All the parties and Beneficiaries shall treat the transfers in trust as if all the transferred assets, including all the Distribution Trust Assets, had been first transferred to the Beneficiaries and then transferred by the Beneficiaries to the Distribution Trust. The Beneficiaries shall be treated for all purposes of the Internal Revenue Code of 1986, as amended, as the grantors of the Distribution Trust and the owners of the Distribution Trust. The Distribution Trustee shall file returns for the Distribution Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) or (b). All parties, including the Beneficiaries and the Distribution Trustee, shall value the Distribution Trust Assets consistently, and such valuations shall be used for all federal income tax purposes. Beneficiaries may wish to consult with a tax professional regarding the tax consequences of holding a Beneficial Interest in or receiving a Distribution from the Distribution Trust.

### (g)    Preservation of Rights of Action

Unless any Rights of Action against a Person are expressly waived, relinquished, exculpated, released, compromised, transferred or settled in the Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue any and all Rights of Action, and the Reorganized

Debtor's rights to commence, prosecute or settle such Rights of Action shall be preserved notwithstanding the occurrence of the Effective Date. For the avoidance of doubt, and notwithstanding Section 7.1 of the Plan, the Reorganized Debtor shall retain and shall have the exclusive right to enforce any and all of the Debtor's Rights of Action including, without limitation, those arising from or related to (a) Intellectual Property and (b) claims and causes of action under chapter 5 of the Bankruptcy Code (including, without limitation, claims for accounts receivable and claims for turnover of Cash of the Debtor being held in escrow or on deposit by third parties) and shall be the sole beneficiary of any contested matters, claims objections, proceedings or similar actions in connection therewith.

### (h)     Vesting of Property in Reorganized Debtor

On the Effective Date, except as otherwise expressly provided in the Plan or Confirmation Order, all Estate Property, other than the Distribution Trust Assets and the Abandoned Assets, shall vest in the Reorganized Debtor free and clear of all Liens, Claims, interests, and encumbrances of any kind, except as otherwise provided in the Plan.  Moreover, pursuant to Bankruptcy Code section 1141(d), the effect of confirmation of the Plan shall be to discharge the Debtor from any debt that arose before the Effective Date, and any debt of a kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i).

On the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of any and all Estate Property, without supervision of or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### (i)     Tax Exemption

The Plan and the Confirmation Order provide for (a) the issuance, transfer or exchange of notes, debt instruments and equity securities under or in connection with the Plan; (b) the creation, assignment, recordation or perfection of any lien, pledge, other security interest or other instruments of transfer; (c) the making or assignment of any lease; (d) the creation, execution and delivery of any agreements or other documents creating or evidencing the formation of the Reorganized Debtor or the issuance or ownership of any interest in the Reorganized Debtor; and (e) the making or delivery of any deed or other instrument of transfer under the Plan in connection with the vesting of the Estate's assets in the Reorganized Debtor or the Distribution Trust pursuant to or in connection with the Plan, including, without limitation, merger agreements, stock purchase agreement, agreements of consolidation, restructuring, disposition, liquidation or dissolution, and transfers of tangible property.  Pursuant to section 1146 of the Bankruptcy Code and the Plan, any such act described or contemplated herein will not be subject to any stamp tax, transfer tax, filing or recording tax, or other similar tax.

### (j)     No Successor Liability

Pursuant to Bankruptcy Code section 1141 and Article X of the Plan, the property of the Debtor's estate shall vest in the Reorganized Debtor free and clear of all claims and interests of creditors and equity holders of the Debtor. Moreover, pursuant to Bankruptcy Code section

1141(d), the effect of confirmation of the Plan shall be to discharge the Debtor from any debt that arose before the Effective Date, and any debt of a kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i).

The issuance of New Equity through the Plan shall not result in ESW or the Reorganized Debtor (a) having any liability or responsibility for any Claim against or Interest in the Debtor, the Debtor's estate, or Insider of the Debtor, or (b) having any liability or responsibility to the Debtor. Without limiting the effect or scope of the foregoing, and to the fullest extent permitted by applicable laws, neither the issuance of the New Equity nor transfer of assets contemplated in the Plan shall subject the Reorganized Debtor or any of its properties or assets or affiliates, successors, or assigns to any liability for Claims against the Debtor's interests in such assets by reason of such issuance of New Equity or transfer of assets under any applicable laws, including, without limitation, any successor liability.

### 4.5     Treatment of Executory Contracts and Unexpired Leases

#### (k)     Assumption of Executory Contracts

(i)     On the Effective Date, and subject to Section 8.3 of the Plan, all Executory Contracts identified on the Schedule of Assumed Contracts and Unexpired Leases, to be attached to be included in the Plan Supplement, shall be deemed assumed by the Reorganized Debtor. The Plan Sponsor may amend the Schedule of Assumed Contracts and Unexpired Leases at any time prior to the Effective Date.  Entry of the Confirmation Order shall constitute approval of the assumption of such Executory Contracts under sections 365 and 1123 of the Bankruptcy Code.

(ii)     Notwithstanding anything in the Plan to the contrary, the Reorganized Debtor shall assume the Employee Agreements as of the Effective Date.  All payments to be made to the Employees pursuant to the Employment Agreements will be made in accordance with the Employee Agreements, which are incorporated herein by reference.  All Claims that may be asserted by any of the Officers arising under or related to the Officers Agreements shall be treated and paid pursuant to the terms of paragraph 3 of the applicable Officers Agreement..

#### (l)     Rejection of Executory Contracts

All Executory Contracts not identified on the Schedule of Assumed Contracts and Unexpired Leases (or assumed by the Debtor previously) shall be deemed rejected on the Effective Date.  Entry of the Confirmation Order shall constitute approval of such rejections under sections 365 and 1123 of the Bankruptcy Code.  Notwithstanding the rejection of an Executory Contract, the terms of any confidentiality agreement or covenant not to compete contained therein shall survive and remain in full force and effect for the term thereof.

The Debtor will reject prior to the Effective Date, and the Reorganized Debtor will not assume, any employment, severance, bonus, incentive, commission, compensation or similar agreement or plan (or any agreement outside the ordinary course of business) with any employees, officers or directors.  To the extent the 401(k) Plan has not yet been formally rejected and/or terminated prior to the Effective Date, such 401(k) Plan shall be deemed rejected as of the Effective Date, and the Debtor shall take all steps necessary prior to the Effective Date to effectuate termination of the 401(k) Plan.  The Employee Handbook, if any, shall, immediately upon the

Effective Date, be terminated without any action of the Debtor, the Reorganized Debtor or the Plan Sponsor and shall be deemed rejected as of the Effective Date.

On the Effective Date, any and all equity-based incentive plans or stock ownership plans of the Debtor, including all agreements related thereto, entered into before the Effective Date, or other plans, agreements or documents giving rise to Interests, including the contingent cash components of any such plans, agreements, or documents, shall be immediately terminated without any action of the Debtor, the Reorganized Debtor or the Plan Sponsor.  To the extent such plans, agreements or documents are considered to be Executory Contracts, such plans, agreements or documents shall be deemed to be, and shall be treated as though they are, Executory Contracts that are rejected pursuant to section 365 of the Bankruptcy Code under the Plan.  From and after the Effective Date, all warrants, stock options and other equity awards outstanding or issued at such time, whether included in a warrant, plan, contract, agreement or otherwise, will have no value, shall be cancelled and extinguished and thus will not entitle any holder thereof to purchase or otherwise acquire any equity interests in the Reorganized Debtor.

**(m)    Procedures Related to Assumption of Executory Contracts and Unexpired Leases**

i)    <u>Establishment of Cure Claim Amounts</u>

The Cure Amounts associated with the assumption of the Executory Contracts pursuant to Section 8.1 of the Plan are specified in the Schedule of Assumed Contracts and Unexpired Leases. The Debtor shall serve counterparties to the Executory Contracts with a Notice of (I) Possible Assumption of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object Thereto (the "<u>Cure Notice</u>"). The Debtor and the Plan Sponsor reserve the right to amend or supplement the Cure Notice.

Any Objection to Cure Notice including (i) an objection to the applicable Cure Amount (a "<u>Cure Objection</u>") and (ii) an objection to the adequate assurance of future performance (an "<u>Adequate Assurance Objection</u>") to be provided by the Plan Sponsor on behalf of the Reorganized Debtor must be in writing, filed with the Bankruptcy Court, and served upon (a) the Debtor, (b) counsel to the Debtor, (c) counsel to the Plan Sponsor, and (d) the U.S. Trustee, by no later than the deadline set for objections to confirmation of the Plan (the "<u>Objection Deadline</u>"). The objection must set forth the specific default alleged under the applicable Executory Contract and claim a specific monetary amount that differs from the applicable Cure Amount, if any, and/or further information required of the Reorganized Debtor with respect to adequate assurance of future performance.

If no Cure Objection is received by the Objection Deadline to an Executory Contract, then the assumption of such Executory Contract shall be authorized pursuant to sections 365 and 1123 of the Bankruptcy Code and the applicable Cure Amount, if any, shall be binding upon the non-Debtor counterparty to such Executory Contract for all purposes and shall constitute a final determination of the Cure Amount required to be paid to such Executory Contract counterparty, and such Executory Contract counterparty shall be deemed to have waived its right to object to, contest, condition, or otherwise restrict the assumption of such Executory Contract (including, without limitation, from asserting any additional cure or other amounts with respect to the

23

Executory Contract arising prior to such assumption).  Furthermore, upon the assumption of such Executory Contract, the Reorganized Debtor shall enjoy all of the Debtor's rights and benefits thereunder without the necessity of obtaining any party's written consent to the Debtor's assumption of such rights and benefits.

ii)    <u>Objection to Disputed Cure Amounts</u>

The Plan Sponsor shall have the right to examine any Cure Objection filed by any party and shall have the right to object to and contest the Disputed Cure Amount asserted therein.

If an objection to a Disputed Cure Amount has not been resolved by the Bankruptcy Court or agreement of the parties by the Effective Date, the Executory Contract related to such Disputed Cure Amount shall be deemed assumed by the Reorganized Debtor effective on the Effective Date; provided, however, the Reorganized Debtor may revoke an assumption of any such Executory Contract within ten (10) days after entry of an order by the Bankruptcy Court adjudicating the objection to the Disputed Cure Amount related to the Executory Contract by filing a notice of such revocation with the Bankruptcy Court and serving a copy on the party(ies) whose Executory Contract is rejected.  Any Executory Contract identified in a revocation notice shall be deemed rejected retroactively to the Effective Date.

iii)    <u>Payment of Cure Amounts</u>

Within ten (10) Business Days after the Effective Date, the Distribution Trustee shall pay all Cure Amounts related to Executory Contracts listed on the Cure Notice, other than Disputed Cure Amounts, from out of the Consideration.

Subject to Section 8.3(b) of the Plan, the Distribution Trustee shall pay all Cure Amounts that are subject to an objection on the later of (i) within ten (10) Business Days after the Effective Date or (ii) within ten (10) Business Days after the parties enter into an agreement resolving the objection or entry of an order by the Bankruptcy Court resolving the objection.

iv)    <u>No Admission of Liability</u>

Neither the inclusion nor exclusion of any Executory Contract by the Debtor and the Plan Sponsor on the Cure Notice, nor anything contained in the Plan, shall constitute an admission by the Debtor or the Plan Sponsor that any such contract or unexpired lease is in fact an Executory Contract or that the Debtor has any liability thereunder.

v)    <u>Reservation of Rights</u>

Nothing in the Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, causes of action, or other rights of the Debtor under any executory or non-executory contract or any unexpired or expired lease, nor shall any provision of the Plan increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor under any such contract or lease.

24

(n)    **Rejection Claim Bar Date**

Each Claim resulting from the rejection of an Executory Contract, pursuant to Section 8.2 of the Plan, shall be filed with the Bankruptcy Court no later than the Rejection Claim Bar Date; provided, however, any party whose Executory Contract is rejected pursuant to a revocation notice, pursuant to Section 8.3(b) of the Plan, may file a rejection damage Claim arising out of such rejection within thirty (30) days after the filing of the revocation notice with the Bankruptcy Court. Any Claim resulting from the rejection of an Executory Contract not filed by the applicable deadline shall be discharged and forever barred and shall not be entitled to any Distributions under the Plan. The Distribution Trustee shall have the right to object to any rejection damage Claim.

(o)    **Indemnification Obligations**

Any obligation or agreement of the Debtor to indemnify, reimburse, or limit the liability of any Person, including any officer or director of the Debtor, or any agent, professional, financial advisor, or underwriter of any securities issued by the Debtor, relating to any acts or omissions occurring before the Effective Date, whether arising pursuant to charter, bylaws, contract or applicable state law, shall be deemed to be, and shall be treated as, a General Unsecured Claim and/or Executory Contract and shall be deemed to be rejected, canceled, and discharged pursuant to the Plan as of the Effective Date and any and all Claims resulting from such obligations are disallowed under section 502(e) of the Bankruptcy Code or other applicable grounds, including section 502(d), or if any court of applicable jurisdiction rules to the contrary, such Claim shall be estimated pursuant to section 502(c) of the Bankruptcy Code in the amount of $0 or such other amount as determined by the Bankruptcy Court.

**4.6    Provisions Governing Distributions of Property**

(a)    **Distribution Procedures Regarding Allowed Claims and Interests.** The Distribution Trustee shall make all Distributions of Distribution Trust Assets required to be made under the Plan, including Distributions from the Distribution Trust, from Available Cash.

(b)    **Distributions on Allowed Claims and Interests Only.** Distributions on account of Claims and Interests shall be made only to the holders of Allowed Claims and Interests, respectively. Unless and until a Disputed Claim or Interest becomes an Allowed Claim or Interest, as applicable, the holder of that Disputed Claim or Interest shall not receive a Distribution on account of the Claim or Interest giving rise to such Disputed Claim or Interest.

(c)    **Place and Manner of Payments of Distributions.** Except as otherwise specified in the Plan, Distributions shall be made by mailing such Distribution to the Creditor or Interest Holder at the address listed in any proof of claim filed by the Creditor or at such other address as such Creditor or Interest Holder shall have specified for payment purposes in a written notice received by the Distribution Trustee at least twenty (20) days before a Distribution Date. If a Creditor or Interest Holder has not filed a proof of claim or sent the Distribution Trustee and the Reorganized Debtor a written notice of payment address, then the Distribution(s) for such Creditor or Interest Holder will be mailed to the address identified in the Schedules

of Assets and Liabilities.  The Distribution Trustee and/or Reorganized Debtor, as the case may be, shall distribute any Cash by wire, check, or such other method as it deems appropriate under the circumstances.  Before receiving any Distributions, all Creditors and Interest Holders, at the request of the Distribution Trustee and/or Reorganized Debtor, must provide written notification of their respective Federal Tax Identification Numbers or Social Security Numbers to the Distribution Trustee and/or Reorganized Debtor, as the case may be; otherwise, the Distribution Trustee and/or Reorganized Debtor, as the case may be, may suspend Distributions to any Creditors or Interest Holders who have not provided their Federal Tax Identification Numbers or Social Security Numbers.

(i)  <u>Undeliverable Distributions</u>.  If a Distribution to any Creditor or Interest Holder is returned as undeliverable, the Distribution Trustee and/or Reorganized Debtor, as the case may be, shall use reasonable efforts to determine the then current address for such Creditor or Interest Holder.  If the Distribution Trustee and/or Reorganized Debtor, as the case may be, cannot determine, or is not notified of, a then current address for such Creditor or Interest Holder within six months after the Effective Date, the Distribution reserved for such Creditor or Interest Holder shall be deemed an unclaimed Distribution, and Section 7.5(e) of the Plan shall be applicable thereto.

(ii)  <u>Unclaimed Distributions</u>.  If the current address for a Creditor or Interest Holder entitled to a Distribution under the Plan has not been determined or such Creditor or Interest Holder has otherwise not been located within six months after the Effective Date or a Creditor or Interest Holder has not submitted a valid Federal Tax Identification Number or Social Security Number to the Distribution Trustee and/or Reorganized Debtor, as the case may be, within three months after the Distribution Trustee and/or Reorganized Debtor, made a request therefor, then in each case such Creditor or Interest Holder shall forfeit the Distribution on the Claim or Interest and any amounts to which the Creditor or Interest Holder would have otherwise been entitled shall become available to pay other Allowed Claims or Interests.

(iii)  <u>Withholding</u>.  The Distribution Trustee and Reorganized Debtor may, but shall not be required to, at any time withhold from a Distribution from Available Cash to any Person (except the Internal Revenue Service) amounts sufficient to pay any tax or other charge that has been or may be imposed on such Person with respect to the amount distributable or to be distributed under the income tax laws of the United States or of any state or political subdivision or entity by reason of any Distribution provided for in the Plan, whenever such withholding is determined by the Distribution Trustee or the Reorganized Debtor, as applicable (in its sole discretion) to be required by any law, regulation, rule, ruling, directive, or other governmental requirement.  The Distribution Trustee or the Reorganized Debtor, as applicable, in the exercise of its sole discretion and judgment, may enter into agreements with taxing or other authorities for the payment of such amounts that may be withheld in accordance with the provisions of this section.

**(d)      Dissolution**

(i) The Distribution Trustee shall be discharged and Distribution Trust shall be dissolved at such time as all of the Distribution Trust Assets have been liquidated and distributed pursuant to the Plan and the Distribution Trust Agreement; provided, however, that in no event shall the Distribution Trust be dissolved later than three (3) years from the creation of the Distribution Trust unless the Bankruptcy Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension is necessary to facilitate or complete the liquidation of the Distribution Trust Assets.  Such extensions in aggregate shall not exceed three (3) years without a favorable private letter ruling from the Internal Revenue Service or an opinion of counsel satisfactory to the Distribution Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes)

(ii) If at any time the Distribution Trustee determines, in reliance upon such professionals as a Distribution Trustee may retain, that the expense of administering the Distribution Trust so as to make a final distribution to Distribution Trust Beneficiaries is likely to exceed the value of the assets remaining in the Distribution Trust, the Distribution Trustee may (i) reserve any amount necessary to dissolve the Distribution Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the Internal Revenue Code, (B) exempt from United States federal income tax under section 501(a) of the Internal Revenue Code, (C) not a "private foundation," as defined in section 509(a) of the Internal Revenue Code, and (D) that is unrelated to the Debtor, the Distribution Trust, and any insider of the Distribution Trustee, and (iii) dissolve the Distribution Trust.

**(e)      Procedures Regarding Distributions from the Distribution Trust.** Procedures regarding Distributions from the Distribution Trust shall be governed by the Distribution Trust Agreement.

**4.7      Procedures for Resolution of Disputed Claims**

**(a)      Right to Object to Claims**.  Notwithstanding anything to the contrary herein, subject to the terms and conditions set forth in the Distribution Trust Agreement, and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, except insofar as a Claim is Allowed under the Plan on and after the Effective Date, the Distribution Trustee and the Reorganized Debtor shall have the authority, but not the obligation, to: (1) file, withdraw or litigate to judgment objections to and requests for estimation of Claims and Interests; (2) settle or compromise any Disputed Claim or Interest without any further notice to or action, order or approval by the Bankruptcy Court; and (3) administer and adjust the Claims register, stock transfer ledger or similar register or record of the Debtor to reflect any such settlements or compromises without any further notice to or action,

order or approval by the Bankruptcy Court. The Distribution Trustee shall succeed to any pending objections to Claims and Interests filed by the Debtor prior to the Effective Date, and shall have and retain any and all rights and defenses the Debtor had immediately prior to the Effective Date with respect to any Disputed Claim. The Reorganized Debtor shall provide commercially reasonable assistance and cooperation to the Distribution Trustee, at the Distribution Trustee's cost, in connection with the Distribution Trustee's prosecution of objections to Claims and Interests, including, without limitation, reasonable access to the books and records of the Debtor or the Reorganized Debtor (as the case may be) and other information reasonably requested by the Distribution Trustee to enable the Distribution Trustee to perform its obligations under the Distribution Trust Agreement; provided that the Distribution Trustee will keep all such information confidential and will not disclose any information provided by the Reorganized Debtor without express written consent of the Reorganized Debtor. Further, notwithstanding anything to the contrary, no provision by the Reorganized Debtor of any privileged information to the Distribution Trustee shall result in the waiver of any privilege held by the Reorganized Debtor. The Distribution Trustee will cooperate fully with the Reorganized Debtor in preserving privilege and confidentiality of any information provided by the Reorganized Debtor to the Distribution Trustee. Notwithstanding the foregoing, nothing herein shall impose upon or require the Reorganized Debtor to preserve or maintain the Debtor's books and records for any purpose beyond twelve months following the Effective Date unless the Distribution Trustee notifies the Reorganized Debtor before that time that the Distribution Trustee has no further need to have access to such books and records.

**(b)**    **Deadline for Objecting to Claims**. Objections to Claims and Interests must be filed with the Bankruptcy Court, and a copy of the objection must be served on the subject Creditor or Interest Holder before the expiration of the Claim and Interest Objection Deadline (unless such period is further extended by subsequent orders of the Bankruptcy Court); otherwise such Claims and Interests shall be deemed Allowed in accordance with section 502 of the Bankruptcy Code. The objection shall notify the Creditor or Interest Holder of the deadline for responding to such objection.

**(c)**    **Right to Request Estimation of Claims**. Pursuant to section 502(c) of the Bankruptcy Code, each of the Debtor, the Reorganized Debtor, and the Distribution Trustee may request estimation or liquidation of any Disputed Claim or Interest that is contingent or unliquidated or any Disputed Claim arising from a right to an equitable remedy or breach of performance.

**4.8**    **Injunctions, Releases, and Discharge**

**(a)**    **Discharge and Release**

The Plan contains a release of the Debtor which provides:

**To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or**

the Confirmation Order, all Distributions under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and causes of action, whether known or unknown, including any interest accrued on such Claims from and after the Petition Date, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Interests. Except as otherwise expressly provided by the Plan or the Confirmation Order, upon the Effective Date, the Debtor and its estate will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code. The Confirmation Order shall be a judicial determination of the discharge of all Claims against, and Interests in, the Debtor, subject to the occurrence of the Effective Date.

### (b)    Discharge Injunction

The Plan contains a discharge injunction which provides:

**Except as otherwise expressly provided in the Plan, the discharge and releases set forth in Section 11.1 hereof shall also operate as an injunction permanently prohibiting and enjoining the commencement or continuation of any action or the employment of process with respect to, or any act to collect, recover from, or offset (a) any Claim discharged and released in Section 11.1 hereof, or (b) any cause of action, whether known or unknown, based on the same subject matter as any Claim discharged and released in Section 11.1 hereof. Except as otherwise expressly provided in the Plan, all Persons shall be precluded and forever barred from asserting against the Debtor and the Reorganized Debtor, their successors or assigns, or their assets, properties, or interests in property, any other or further Claims, or any other right to legal or equitable relief, regardless of whether such right can be reduced to a right to payment, based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date.**

### (c)    Exculpation and Limitation of Liability

The Plan contains an exculpation in favor of the Debtor and its representatives and professionals with respect to post-petition and pre-Effective Date acts which provides:

**The Exculpated Parties will neither have nor incur any liability to any entity for any claims or causes of action arising on or after the Petition Date and prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the consummation of the Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor, the approval of the Disclosure**

**Statement or confirmation or consummation of the Plan; provided, however, that the foregoing provisions will have no effect on the liability of any entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence or willful misconduct; provided, further, that the Debtor will be entitled to rely upon the advice of counsel concerning their duties pursuant to, or in connection with, the above referenced documents, actions or inactions.**

        (d)        **Releases by the Debtor**

The Plan contains the Debtor's release of the Released Parties which provides:

**Notwithstanding anything to the contrary in the Plan or the Confirmation Order, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby acknowledged and confirmed, the Debtor will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to the Released Parties and their respective related parties (and each such Released Party and their respective related parties so released shall be deemed forever released by the Debtor) and their respective properties from any and all claims that the Debtor or any of their respective related parties would have been legally entitled to assert in their own right, on their own behalf, or on behalf of another party, against the Released Parties or their respective related parties; provided, however, that the foregoing provisions of this release shall not operate to waive or release (i) the rights of the Debtor to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered under or in connection with the Plan or assumed pursuant to the Plan or assumed pursuant to final order of the Bankruptcy Court; and/or (ii) any defenses against a third party.**

**The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order will permanently enjoin the commencement or prosecution by any person, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities released pursuant to this release.**

        (e)        **Releases by Third Parties**

The Plan also contains a release by third parties, including Creditors, in favor of the Reorganized Debtor, the Plan Sponsor, the DIP Lender, the Noteholders and their respective representatives, professionals and affiliates which provides:

**To the extent allowed by applicable law, on, and as of, the Effective Date and for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Debtor and the Released Parties shall be forever released from any and all claims, obligations, actions, suits, rights, debts, accounts, causes of action, remedies, avoidance actions, agreements, promises, damages, judgments, demands, defenses, or claims in respect of equitable subordination, and liabilities throughout the world under any law or court ruling through the Effective Date (including all claims based on or arising out of facts or**

**circumstances that existed as of or prior to the Effective Date, including claims based on negligence or strict liability, and further including any derivative claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, its Estate, or the Reorganized Debtor would have been legally entitled by applicable law to assert in its own right, whether individually or collectively) which the Debtor, its Estate, the Reorganized Debtor, Creditors or other persons receiving or who are entitled to receive Distributions under the Plan may have against any of them in any way related to the Chapter 11 Case or the Debtor (or its predecessors); provided however that the foregoing release of the Released Parties is granted only by the (a) Creditors who are unimpaired, (b) Interest Holders who returned a Ballot and did not check the opt-out box on the Ballot, and (c) Interest Holders who were sent a solicitation package but did not return a Ballot with the opt-out box checked; provided further, however that the release provided in this Section 11.5 shall not apply to (i) any Interest Holder in category (c) above if the solicitation package was returned to the Debtor as undelivered, and that such Interest Holder did not otherwise return a ballot and (ii) Interest Holders that are deemed to reject the Plant; and provided further, however, that the release provided in this Section 11.5 shall not extend to any claims by any Governmental Unit with respect to criminal liability under applicable law, willful misconduct or bad faith under applicable law, or *ultra vires* acts under applicable law.**

With regard to all Released Parties, releases are appropriate for several reasons: (1) the Plan is expected to be accepted by all impaired creditors; (2) each Released Party has made substantial contributions in exchange for the releases provided for its benefit under the Plan, including permitting the payment in full of all Allowed Class 4 General Unsecured Claims; (3) each Released Party shared an identity of interest in the common goal of confirmation of the Plan; and (4) the Debtor believes that the releases provided in the Plan are of little or no value to its estate as the Debtor does not believe that any claims exist against any Released Party at this time. ESW is entitled to releases under the Plan. As the Plan Sponsor, ESW has made substantial contributions to the Plan. Without ESW, the Plan would not be possible and ESW would not serve as Plan Sponsor.

### 4.9    Conditions to Confirmation and Effectiveness

#### (a)    Conditions to Confirmation

The Confirmation Order will not be effective unless (a) the Confirmation Order shall be in form and substance acceptable to the Plan Sponsor, in its reasonable discretion, and shall provide for the Plan Sponsor and the DIP Lender, pursuant to the Subscription Option, and the Series A Preferred Stockholder, pursuant to the Series A Preferred Exchange Option, to acquire the New Equity, free and clear of all Liens, Claims, interests and encumbrances of any kind, except as otherwise provided in the Plan, (b) the final version of the Plan, Plan Supplement, and any other documents, or schedules thereto, shall have been filed in form and substance acceptable to the Plan Sponsor in its reasonable discretion, and (c) no breach or failure to comply with the terms of the DIP Order, the DIP Note, the RSA, the Plan or any other material order of the Bankruptcy Court shall have occurred and be continuing.

### (b)    Conditions to Effectiveness

The Plan will not be effective unless (a) the conditions to confirmation above have been either satisfied, or waived, by the Debtor and Plan Sponsor, (b) the Confirmation Order in form and substance reasonably satisfactory to the Debtor and Plan Sponsor shall have been entered by the Bankruptcy Court, confirming the Plan, and the Confirmation Order shall be in full force and effect and not subject to any stay or injunction, (c) the Plan Documents shall have been executed and delivered by all relevant parties, and any conditions (other than the occurrence of the Effective Date or certification by the Debtor that the Effective Date has occurred) contained therein have been satisfied or waived in accordance therewith, (d) the Cash Consideration shall have been received by the Debtor or the Distribution Trust, (e) no breach or failure to comply with the terms of the RSA, the Plan, the Confirmation Order or any other material Final Order of the Bankruptcy Court shall have occurred and be continuing; (f) ESW shall acquire the New Equity, free and clear of all Liens, Claims, interests and encumbrances of any kind, except as otherwise provided in the Plan, (g) the Debtor has not caused, or as to Insiders, permitted to occur, a Material Adverse Change with respect to the Debtor's Intellectual Property, and (h) no "ownership change" as such term is used in section 382 of title 26 of the United States Code, shall have occurred on or after the Petition Date.

### 4.10    Modification, Revocation or Withdrawal of the Plan

### (a)    Defects, Omissions, and Amendments of the Plan

The Debtor may, with the consent of the Plan Sponsor and the approval of the Bankruptcy Court and without notice to holders of Claims and Interests, insofar as it does not materially and adversely affect holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such a manner and to such extent necessary or desirable to expedite the execution of the Plan.    The Debtor may, with the consent of the Plan Sponsor, propose amendments or alterations to the Plan before the Confirmation Hearing as provided in section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of holders of Claims and Interests, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code and the Debtor has complied with section 1125 of the Bankruptcy Code.    The Debtor may, with the consent of the Plan Sponsor, propose amendments or alterations to the Plan after the Confirmation Date but prior to substantial consummation, in a manner that, in the opinion of the Bankruptcy Court, does not materially and adversely affect holders of Claims and Interests, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code, the Debtor has complied with section 1125 of the Bankruptcy Code, and after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under section 1129 of the Bankruptcy Code.

### (b)    Withdrawal of the Plan

The Debtor reserves the right to withdraw the Plan, provided that the Plan Sponsor consents, at any time prior to the Confirmation Date.    If the Debtor withdraws the Plan prior to the Confirmation Date, or if the Confirmation Date does not occur by October 16, 2020, unless otherwise extended by mutual agreement of the Debtor and the Plan Sponsor, or the Effective Date does not occur by October 23, 2020, unless otherwise extended by mutual agreement of the Debtor

and the Plan Sponsor, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute an admission, waiver or release of any claims by or against the Debtor or any other person, or to prejudice in any manner the rights of the Debtor, the Debtor's Estate, or any person in any further proceedings involving the Debtor.

### 4.11    Retention of Jurisdiction

#### (a)    Bankruptcy Court Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have such jurisdiction over the Chapter 11 Case to the maximum extent as is legally permissible, including, without limitation, for the following purposes:

i.    To allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

ii.    To ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

iii.    To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any Executory Contract;

iv.    To consider and approve any modification of the Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

v.    To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or any Plan Documents or any entity's obligations in connection with the Plan or any Plan Documents, or to defend any of the rights, benefits, Estate Property transferred, created, or otherwise provided or confirmed by the Plan or the Confirmation Order or to recover damages or other relief for violations thereof;

vi.    To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor, the Estate, the Reorganized Debtor or the Distribution Trustee;

vii.    To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtor, or the Estate that may be pending on the Effective Date or that may be brought by the Debtor, the Reorganized Debtor, or the Distribution Trustee (as applicable), or any other related proceedings by the Reorganized Debtor, and to enter and enforce any default judgment on any of the foregoing;

viii.    To decide or resolve any and all applications for compensation;

ix.     To issue orders in aid of execution and implementation of the Plan or any Plan Documents to the extent authorized by section 1142 of the Bankruptcy Code or provided by the terms of the Plan;

x.     To decide issues concerning the federal or state tax liability of the Debtor which may arise in connection with the confirmation or consummation of the Plan or any Plan Documents;

xi.     To interpret and enforce any orders entered by the Bankruptcy Court in the Chapter 11 Case; and

xii.     To enter an order closing this Chapter 11 Case when all matters contemplating the use of such retained jurisdiction have been resolved and satisfied.

### (b)     Limitations on Jurisdiction

In no event shall the provisions of the Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334, as well as the applicable circumstances that continue jurisdiction for defense and enforcement of the Plan and Plan Documents.  For the avoidance of doubt, however, such jurisdiction shall be deemed, by the entry of the Confirmation Order, to:

i.     Permit entry of a final judgment by the Bankruptcy Court in any core proceeding referenced in 28 U.S.C. § 157(b) and to hear and resolve such proceedings in accordance with 28 U.S.C. § 157(c) and any and all related proceedings, including, without limitation, (i) all proceedings concerning disputes with, or Rights of Action or Claims against, any Person that the Debtor, the Estate, the Distribution Trust or the Reorganized Debtor or any of their successors or assigns, may have, and (ii) any and all Rights of Action or other Claims against any Person for harm to or with respect to (x) any Estate Property, including any infringement of Intellectual Property or conversion of Estate Property, or (y) any Estate Property liened or transferred by the Debtor to any other Person;

ii.     Include jurisdiction over the recovery of any Estate Property (or property transferred by the Debtor with Bankruptcy Court approval) from any Person wrongly asserting ownership, possession or control of the same, whether pursuant to sections 542, 543, 549, 550 of the Bankruptcy Code or otherwise, as well as to punish any violation of the automatic stay under section 362 of the Bankruptcy Code or any other legal rights of the Debtor or the Estate under or related to the Bankruptcy Code; and

iii.     Permit the taking of any default judgment against any Person who has submitted himself or herself to the jurisdiction of the Bankruptcy Court.

## ARTICLE V.   RISK FACTORS

### A.    Risks Related to Bankruptcy

#### 1.    Parties May Object to the Plan's Classification of Claims and Interests

Bankruptcy Code section 1122 provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Debtor believes that the classification of the Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtor created Classes of Claims and Interests, each encompassing Claims or Interests, as applicable, that are substantially similar to the other Claims or Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

#### 2.    The Debtor May Not Be Able to Obtain Confirmation of the Plan

With regard to any proposed plan of reorganization, the Bankruptcy Court might not confirm the Plan as proposed if the Bankruptcy Court finds that any of the statutory requirements for confirmation under Bankruptcy Code section 1129 have not been met.

#### 3.    The Conditions Precedent to the Effective Date of the Plan May Not Occur

As more fully set forth in the Plan, the Effective Date is subject to certain conditions precedent.  If such conditions precedent are not met or waived, the Effective Date will not occur.

#### 4.    Allowed Claims May Exceed Estimates

The projected distributions set forth in this Disclosure Statement are based upon, among other things, good faith estimates of the total amounts of Claims and Interests that will ultimately be Allowed. The actual amount of Allowed Claims, could be materially greater than anticipated, which could impact the distributions to be made to holders of Claims and Equity.

### B.    Risks Related to Financial Information

The financial information contained in this Disclosure Statement has not been audited. In preparing this Disclosure Statement, the Debtor relied on financial data derived from the Debtor's books and records and schedules and statements that was available at the time of such preparation.  Although the Debtor has used reasonable efforts to assure the accuracy of the financial information provided in this Disclosure Statement the Debtor is unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

## ARTICLE VI.
## CONFIRMATION OF THE PLAN

### A.     The Confirmation Hearing

Bankruptcy Code section 1128(a) requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation of the Plan.  Bankruptcy Code section 1128(b) provides that any party in interest may object to Confirmation of the Plan.

Immediately after the Petition Date, the Debtor will file the Procedures Motion requesting, among other things, the Bankruptcy Court to schedule a Confirmation Hearing no later than thirty-five (35) days after the Petition Date.  The hearing will be held before the United States Bankruptcy Judge assigned to the Chapter 11 Case in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Wilmington, Delaware 19801.  The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any adjournment thereof.

Objections to Confirmation of the Plan must be filed and served as provided in the Procedures Order.  **Unless objections to Confirmation of the Plan are timely served and filed in compliance with the Procedures Order, they may not be considered by the Bankruptcy Court**.

### B.     Requirements for Confirmation of the Plan

Among the requirements for the Confirmation of the Plan is that the Plan (i) is accepted by all Impaired Classes of Claims or Interests, or, if rejected by an Impaired Class of Claims or Interests, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Impaired Class of Claims or Interests; (ii) is feasible; and (iii) is in the "best interests" of Holders of Claims or Interests.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of Bankruptcy Code section 1129.  The Debtor believes that: (i) the Plan satisfies or will satisfy all of the necessary statutory requirements of chapter 11 of the Bankruptcy Code; (ii) the Debtor has complied or will have complied with all of the necessary requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith. Specifically, in addition to other applicable requirements, the Debtor believes that the Plan satisfies or will satisfy the following applicable Confirmation requirements of Bankruptcy Code section 1129:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtor, as a plan proponent, has complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the Plan for services or for costs and

expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been disclosed to the Bankruptcy Court, and any such payment: (1) made before the Confirmation of the Plan is reasonable; or (2) is subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after Confirmation of the Plan.

▪ Either each holder of a Claim in an Impaired Class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated on the Effective Date of the Plan under chapter 7 of the Bankruptcy Code.

▪ Each Class of Claims that is entitled to vote on the Plan will have accepted the Plan.

▪ Except to the extent a different treatment is agreed to, the Plan provides that all Administrative Claims and Allowed Priority Tax Claims will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable.

▪ At least one Class of Impaired Claims will have accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class.

▪ Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successors thereto.

▪ All accrued and unpaid fees of the type described in 28 U.S.C. § 1930, including the fees of the U.S. Trustee, will be paid as of the Effective Date.

## C.    Best Interests of Creditors

In order to satisfy this test, each Holder of a Claim or Interest in an impaired Class must either (i) accept the plan or (ii) receive or retain under the plan cash or property of value, as of the effective date of the plan, that is not less than the value such Holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code.  The Debtor believe that Holders of Claims against and Interests in the Debtor will receive an equal or greater recovery under the Plan than they would in a chapter 7 liquidation for the following reasons.

As discussed above, the Debtor's management engaged in a comprehensive full-scale search for new investments in and/or a purchaser of the Debtor's assets prior to the Petition Date. Management was unable to locate additional investors and it became clear that a sale of the Debtor was the most realistic option.  The Debtor received a number of proposals in connection with a possible sale and determined that the best available option was a proposal from ESW, which is embodied in the Plan.

As set forth more fully above, the Plan generally provides for ESW to provide consideration of $6,000,000 million as the Plan Sponsor, plus additional cash to be funded by the Plan Sponsor in an amount equal to the undrawn portion (as of the Effective Date) of $1,000,000

of DIP financing.  These funds will be used to pay all Claims against the Debtor in full other than the Class 1 Claims of Consenting Lender, who agreed to subordinate its claim in order for all other creditors to be paid in full.  The Plan also provides for an orderly sale of the Debtor's Intellectual Property in order to maximize its value.  The Intellectual Property comprises the Debtor's only asset of material value in a liquidation scenario.  The Debtor believes that the orderly sale process will require the retention of a consultant at a significant expense.  Pursuant to the Patent Agreement, the Reorganized Debtor and the Distribution Trust will share the proceeds of any sale proceeds and the Distribution Trust will distribute its share in accordance with the Plan.

The Debtor will have virtually no cash available if the Plan is not confirmed.  Accordingly, in a chapter 7, the trustee would have no readily available source of cash for payments to creditors and no cash available to fund the liquidation the Debtor's assets other than a $20,000 carve out from the DIP Financing.  The Debtor submits that (i) this will be insufficient for the trustee to conduct any or orderly sale of the Intellectual Property and (ii) a fire sale of the Intellectual Property would generate minimal, if any proceeds.  Furthermore, since the Intellectual Property is fully encumbered by pre-petition liens of the SFC Secured Creditors Trust (and will be encumbered by a priming lien of the DIP Lender upon its funding of the DIP), there will be no unencumbered assets for a chapter 7 trustee to sell, it is likely the chapter 7 trustee would simply elect to abandon the Intellectual Property to the DIP Lender and/or the SFC Secured Creditors Trust.

Moreover, under the Plan, the Debtor will avoid the increased costs and expenses of a chapter 7 liquidation, including the fees payable to a chapter 7 trustee and his or her professionals.  The Cash (if any) to be distributed to Creditors would be reduced by the chapter 7 trustee's statutory fee, which is calculated on a sliding scale from which the maximum compensation is determined based on the total amount of moneys disbursed or turned over by the Chapter 7 trustee.  Bankruptcy Code § 326(a) permits reasonable compensation not to exceed 3% of the proceeds in excess of $1 million distributable to creditors.  Moreover, the Debtor believes that the Chapter 7 trustee's professionals, including legal counsel and accountants, would add substantial administrative expenses that would be entitled to be paid ahead of Allowed Claims against the Debtor.  If the Plan is confirmed, the Reorganized Debtor's expenses, including its legal fees, would be paid by the Reorganized Debtor and not dilute the funds available for payments to creditors.

Further, the Debtor expects that it will borrow at least $500,000 from the DIP Lender during the Chapter 11 Case.  The Debtor will not be required to pay any amounts borrowed from the DIP Lender if the Plan is confirmed and becomes effective.  In a chapter 7, the trustee would be required to satisfy the DIP.

Based on the foregoing and the liquidation analysis attached as Exhibit A, the Debtor believes that in a chapter 7, the chapter 7 trustee would either elect to abandon the Intellectual Property or else DIP the Lender and/or the SFC Secured Creditors Trust would foreclose on the Debtor's assets.  In either event, no other Holders of Claims or Interests would receive any recovery.  In contrast, the Plan pays the Allowed Claims of unsecured creditors in full and leaves open the possibility that the Holders of Class 6 Common Stock may receive some distribution if the IP Recovery is sufficient to satisfy the Claims of the Consenting Secured Creditor in full.  Holders of Class 4 General Unsecured Claims and Class 6 Common Stock would not receive any

Recovery in a chapter 7.  Accordingly, the Plan satisfies the "best interests" testify with respect to Class 6 and Class 7.

### D. Feasibility

Bankruptcy Code section 1129(a)(11) requires that confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor, or any successor to the Debtor (unless such liquidation or reorganization is proposed in the plan).  To determine whether the Plan meets this feasibility requirement, the Debtor and Plan Sponsor have analyzed the ability of the Reorganized Debtor to meet its obligations under the Plan.  Further, as discussed herein, the Debtor and Plan Sponsor believe that the Reorganized Debtor will be viable following the Effective Date, and that the Plan therefore meets the feasibility requirements of the Bankruptcy Code.  The Debtor shall present further information and evidence regarding feasibility as may be necessary in connection with Confirmation of the Plan.  In any event, the Plan contemplates the funding of all Consideration by the Plan Sponsor on the Effective Date, and therefore creditor recoveries are not impacted by the Reorganized Debtor's post-Effective Date feasibility.

### E. Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or interests that is impaired under a plan accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required.

A class is "impaired" unless a plan: (a) leaves unaltered the legal, equitable and contractual rights to which the claim or the interest entitles the holder of such claim or interest; or (b) cures any default, reinstates the original terms of such obligation, compensates the holder for certain damages or losses, as applicable, and does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Bankruptcy Code section 1126(c) defines acceptance of a plan by a class of claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in that class, counting only those claims that actually voted to accept or reject the plan. Thus, a Class of impaired Claims will have voted to accept the Plan only if two-thirds in amount and a majority in number actually voting cast their Ballots in favor of acceptance.  Here, Classes 1 and 5 are impaired under the Plan.  Both Classes are expected to vote unanimously to accept the Plan.

Bankruptcy Code section 1126(d) defines acceptance of a plan by a class of interests as acceptance by holders of such interests, other than any entity designated under subsection Bankruptcy Code section 1126(e), that hold at least two-thirds in amount of the allowed interests of such class held by holders of such interests, other than any entity designated under Bankruptcy Code section 1126(e), that have accepted or rejected such plan.  Here, Classes 6 and 7 are impaired under the Plan.

### F.    Confirmation Without Acceptance by All Impaired Classes

Bankruptcy Code Section 1129(b) allows a Bankruptcy Court to confirm a plan even if all impaired classes have not accepted it, provided that if there is an impaired class of claims, the plan has been accepted by at least one impaired class of claims, determined without including the acceptance of the plan by any insider. Notwithstanding an impaired class's rejection or deemed rejection of the plan, such plan will be confirmed, at the plan proponent's request, in a procedure commonly known as "cramdown," so long as the plan does not "discriminate unfairly" (as discussed below) and is "fair and equitable" (as discussed below) with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

Classes 6 and 7  are deemed to have rejected the Plan.  As a result, the Debtor will request Confirmation of the Plan under Bankruptcy Code section 1129(b).

The Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan, the Plan Supplement, or any schedule or exhibit, including to amend or modify it to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary, subject to the written approval of the Plan Sponsor.

### 1.    One Impaired Class of Creditors has Accepted the Plan

The Debtor believes that the Plan satisfies these requirements that one accepting class of claims has voted to accept the Plan.  The only Class of Impaired Creditors is Class 1.  The Holder of Class 1 Claim, the SFC Secured Creditors Trust, whose beneficial owners are all insiders, voted to accept the Plan.  Given that there are no non-insider Holders of Impaired Claims, the Debtor submits that, because the only Impaired Class of Claims voted to accept the Plan, the Plan satisfies this requirement.

### 2.    No Unfair Discrimination

The "unfair discrimination" test applies to classes of claims or interests that reject or are deemed to have rejected a plan and that are of equal priority with another class of claims or interests that is receiving different treatment under such plan. The test does not require that the treatment of such classes of claims or interests be the same or equivalent, but that such treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (e.g., classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly, and, accordingly, a plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class. The Debtor submits that t the Plan is structured such that it does not "discriminate unfairly" against any rejecting Class.

### 3.    Fair and Equitable Test

The "fair and equitable" test applies to classes that reject or are deemed to have rejected a plan and are of different priority and status vis-à-vis another class (e.g., secured versus unsecured claims, or unsecured claims versus equity interests), and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class,

including interest. As to the rejecting class, the test sets different standards depending upon the type of claims or interests in such rejecting class.

The Debtor submits that the Plan satisfies the "fair and equitable" test as no non-accepting Impaired Class will receive or retain payments or distributions, on account of their Claims or Interests, sufficient to permit full satisfaction of such Claims before junior Classes receive or retain any property on account of such junior Claims. The Plan satisfies the absolute priority rule specifically with respect to Class 6 because no Classes junior to Classes 6 or 7 will receive or retain any property under the Plan.

**ARTICLE VII.**
**TAX CONSEQUENCES OF THE PLAN**

**THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL OR FOREIGN TAX LAWS AND OF ANY CHANGE IN APPLICABLE TAX LAWS.**

**ARTICLE VIII.   CERTAIN SECURITIES LAW MATTERS**

### A.    In General

As provided in Section 13.4 of the Plan, the Debtor believes that the offering and issuance of any rights by any party, including without limitation ESW or the Estate, under, pursuant to or in effecting the Plan, including, without limitation, the New Equity in the Reorganized Debtor, shall be exempt from the registration requirements of Section 5 of the Securities Act of 1933 (the "Securities Act"), if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for Distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation section 1145 of the Bankruptcy Code. If the issuance of the New Equity does not qualify for an exemption under section 1145 of the Bankruptcy Code, the New Equity, as the case may be, shall be issued in a manner which qualifies for any other available exemption from registration, whether as a private placement, pursuant to Section 4(2) of the Securities Act and/or safe harbor provisions promulgated thereunder, including Rule 506 under the Securities Act.

### B.    Distribution Trust Related Matters

### 1.    Initial Issuance of Beneficial Interests

Unless an exemption is available, the offer and sale of a security generally is subject to registration with the United States Securities and Exchange Commission (the "SEC") under Section 5 of the Securities Act of 1933, as amended (the "Securities Act"). In the opinion of the Debtor, and based on "no action" letters by the SEC, the Beneficial Interests will not be considered "securities" within the definition of Section 2(11) of the Securities Act and corresponding

definitions under state securities laws and regulations ("<u>Blue Sky Laws</u>") because the Beneficial Interests will be uncertificated and non-transferable other than by operation of law. Accordingly, the Beneficial Interests should be issuable in accordance with the Plan without registration under the Securities Act or any Blue Sky Law.

Alternatively, in the event that the Beneficial Interests are deemed to constitute securities, Bankruptcy Code section 1145(a)(1) of the Bankruptcy Code exempts the offer and sale of securities under a plan of reorganization from registration under the Securities Act and Blue Sky Laws if three principal requirements are satisfied:

 A. the securities are offered and sold under a plan of reorganization and are securities of the debtor, of an affiliate of the debtor participating in a joint plan with the debtor, or of a successor to the debtor under the plan;

 B. the recipients of the securities hold a pre-petition or administrative claim against the debtor or an interest in the debtor; and

 C. the securities are issued entirely in exchange for recipient's claim against or interest in the debtor, or principally in such exchange and partly for cash or property.

If and to the extent that the Beneficial Interests may constitute securities, the Debtor believes that these beneficial interests issued in respect of certain Allowed Claims will qualify as securities "of the debtor … or of a successor to the debtor" pursuant to Bankruptcy Code section 1145(a)(1). In addition, the Beneficial Interests will be issued entirely in exchange for such Claims and Interests. Thus, the Debtor believes that the issuance of the Beneficial Interests pursuant to the Plan will satisfy the applicable requirements of Bankruptcy Code section 1145(a)(1), and that such issuance should be exempt from registration under the Securities Act and any applicable Blue Sky Law.

The Debtor believes that their reliance upon the foregoing exemptions in respect of the issuance of the Beneficial Interests is consistent with positions taken by the SEC with respect to similar transactions and arrangements by other chapter 11 trustees. However, the Debtor has not sought any "no-action" letter by the SEC with respect to any such matters, and therefore no assurance can be given regarding the availability of any exemptions from registration with respect to any securities, if any, issued pursuant to the Plan.

### 2. Resales

The Beneficial Interests will be subject to transfer restrictions under the terms of the Distribution Trust Agreement. As provided in said agreement, generally, the Beneficial Interests cannot be assigned or transferred other than by operation of law, and will not be represented by certificates.

### 3. Exchange Act Compliance

Section 12(g) of the Securities Exchange Act of 1934, as amended (the "<u>Exchange Act</u>"), applies only to a company that has both (i) total assets in excess of $10.0 million and (ii) a class

of equity securities held of record by more than 2,000 persons or 500 persons who are not accredited investors (within 120 days after the last day of the company's fiscal year). The Debtor believes it unlikely condition (i) will be deemed satisfied in respect to the Distribution Trust and Beneficial Interests, and in any event, the Distribution Trust should not be required to register under Section 12(g) of the Exchange Act. The Debtor understands that the staff of the SEC has issued no-action letters with respect to the non-necessity of Exchange Act registration of a bankruptcy plan trust when the following are true:

> A.      the beneficial interests in the trust are not represented by certificates or, if they are, the certificates bear a legend stating that the certificates are transferable only upon death or by operation of law;

> B.      the trust exists only to effect a liquidation and will terminate within a reasonable period of time; and

> C.      the trust will issue annual unaudited financial information to all beneficiaries.

Based on the foregoing, the Debtor believes that the Distribution Trust will not be subject to registration under the Exchange Act. However, the views of the SEC on the matter have not been sought by the Debtor and, therefore, no assurance can be given regarding this matter.

## 4.      Compliance if Required

Notwithstanding the preceding discussion, if the Distribution Trustee, in relation to the Distribution Trust, determines, with the advice of counsel, that the Distribution Trust is required to comply with the registration and reporting requirements of the Exchange Act, then prior to the registration of the Distribution Trust under the Exchange Act, the Distribution Trustee (subject to the terms of the Distribution Trust Agreement) will seek to amend the Distribution Trust Agreement, to make such changes as are deemed necessary or appropriate to ensure that the Distribution Trust is not subject to registration or reporting requirements of the Exchange Act. The Distribution Trust Agreement, as so amended, will be effective after notice and opportunity for a hearing, and the entry of an order of the Bankruptcy Court.

If the Distribution Trust Agreement, as amended, is not approved by the Bankruptcy Court or the Bankruptcy Court otherwise determines in a Final Order that registration under the Exchange Act (or any other related or similar federal laws) is required, then the Distribution Trustee will take such actions as may be required to satisfy the registration and reporting requirements of the Exchange Act (or any other related or similar federal laws).

## ARTICLE IX.    POSITION OF THE DEBTOR.

In the opinion of the Debtor, the Plan is preferable to the alternatives described in this Disclosure Statement because it provides for a larger distribution to Holders of Allowed Claims and Interests than would otherwise result in a liquidation under chapter 7 of the Bankruptcy Code. In addition, any alternative other than confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in smaller distributions to Holders of Allowed Claims and Interests than proposed under the Plan.

Respectfully submitted,

**SECURITY FIRST CORP.**

By: */s/ Pankaj Parekh*
       Pankaj Parekh

Its: Chief Executive Officer

-and-

Dated:  August 31, 2020

**SULLIVAN ∙ HAZELTINE ∙ALLINSON LLC**

*/s/ William D. Sullivan*
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, Delaware  19801
Tel: (302) 428-8191
Fax: (302) 428-8195
Email:  bsullivan@sha-llc.com
whazeltine@sha-llc.com

*Proposed Attorneys for Debtor and Debtor in Possession*